# EXHIBIT 1

DIXON



# IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

KIMBERLY POFF, )
      PLAINTIFF, )
  )
V. )
  )
1. STATE OF OKLAHOMA *ex rel* The )
   OKLAHOMA DEPARTMENT OF )
   MENTAL HEALTH AND SUBSTANCE )
   ABUSE SERVICES; )
2. THE BOARD OF DIRECTORS FOR THE )
   OKLAHOMA DEPARTMENT OF )
   MENTAL HEALTH AND SUBSTANCE )
   ABUSE SERVICES, )
3. TERRI WHITE, individually and as the )
   Commissioner and Chief Executive Officer )
   of the Oklahoma Department Of Mental )
   Health And Substance Abuse Services, )
4. DURAND CROSBY, individually and as the )
   Chief Operating Officer of the Oklahoma )
   Department Of Mental Health And )
   Substance Abuse Services; )
5. CRATUS DEWAYNE MOORE, )
   individually and as the General Counsel of )
   Oklahoma Department of Mental Health and )
   Substance Abuse Service; and )
6. ELLEN BUETTNER, individually and as )
   the Director, Human Resources )
   Management, Human Resources )
   Development for the Oklahoma Department )
   Of Mental Health And Substance Abuse )
   Services. )
  )
DEFENDANTS. )
  )
  )

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

          JUN 1 2014

**CASE NO. CJ-2014-**

JURY TRIAL DEMANDED

ATTORNEY'S LIEN CLAIMED

**CJ - 2014 - 4407**

## PETITION

COMES NOW, Kimberly Poff for her cause of action against the Defendants, the State of

Oklahoma ex rel the Oklahoma Department of Mental Health and Substance Abuse Services; the

Board of Directors for the Oklahoma Department of Mental Health and Substance Abuse

Services; Cratus Dewayne Moore, individually, as an employee of Oklahoma Department of

Mental Health and Substance Abuse Services; Ellen Buettner, individually, as an employee of Oklahoma Department of Mental Health and Substance Abuse Services; Defendant Durand Crosby, individually and as an employee of the Department of Mental Health and Substance Abuse Services and Terri White, individually, as an employee of Oklahoma Department of Mental Health and Substance Abuse Services and hereby alleges, and states as follows:

## JURISDICTION AND VENUE

1. Kimberly Poff is a citizen of Oklahoma and a resident of Oklahoma County.

2. Defendant the Oklahoma Department of Mental Health and Substance Abuse Services (hereinafter "Department" or "ODMHSAS") is an agency of the State of Oklahoma and it is charged with the responsibility of regulating providers of services to the mentally ill, or those suffering from drug and alcohol abuse. 43A O.S. §2-101, *et seq.*

3. Defendant, the Board of Mental Health and Substance Abuse Services, is the governing board for ODMHSAS. 43A O.S. §2-101(A) (2).

4. The Chief Executive Officer of the ODMHSAS shall be the Commissioner of Mental Health and Substance Abuse Services. 43A O.S. §2-101(A) (2).

5. The ODMHSAS is charged with investigating any claims of an individual being wrongfully deprived of liberty, or is cruelly, negligently or improperly treated, or inadequate provision is made for the individual's appropriate medical care, proper supervision and safe keeping if the individual is receiving treatment in a facility operated by, certified by, or under contract with the Department. 43A O.S. §2-108(A) (2).

6. On information and belief, Defendant Terri White is a citizen of Oklahoma and the Commissioner and Chief Executive Officer for the Department of Mental Health and Substance Abuse Services.

2

7. On information and belief, Defendant Durand Crosby is a citizen of Oklahoma and the Chief Operating Officer for the Department of Mental Health and Substance Abuse Services.

8. On information and belief, Defendant Cratus Dewayne Moore, a/k/a Dewayne Moore, is a citizen of Oklahoma and the General Counsel for the Department of Mental Health and Substance Abuse Services.

9. On information and belief, Defendant Ellen Buettner is a citizen of Oklahoma and the Director for Human Resources Management, Human Resources Development for the Department of Mental Health and Substance Abuse Services.

10. Venue is proper in that all of the action and events, which is subject of this action, occurred in Oklahoma County.

11. All of the actions or events by the Defendants, the ODMHSAS, Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner, acting in either their individual capacity and/or in their capacity as employees and directors of the ODMHSAS, occurred either while the Defendants were acting under the color of Oklahoma and/or Federal law, and/or while acting under color of state or federal law in which they exceeded their authority but appeared to be otherwise acting under color of state or federal law.

12. On or about August 23, 2013, the Plaintiff was terminated from her job as the Inspector General with the ODMHSAS.

13. On or about 1/14/2014, the Plaintiff timely submitted an Intake Questionnaire and filed a Charge of Discrimination against the Defendant through the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit 1, Intake Questionnaire and Charge of Discrimination.

3

14. On or about 5/7/2014, the EEOC issued the Plaintiff his Notice of Right to Sue. *See* Exhibit 2, Right to Sue letter.

15. On or about June 6, 2014, the Plaintiff delivered a Notice of Tort Claim to the Office of the Risk Management Administrator beginning the Tort Claim process pursuant to 51 O.S. §151 et seq. *See* Exhibit 3, Tort Claim.

16. On or about July 29, 2014, the Office of the Risk Management Administrator issued a letter denying the tort claim. See Exhibit 4, Denial of Tort Claim Letter.

## FACTUAL ALLEGATIONS

17. At the time of her termination Ms. Poff had been a State employee for 22 years and an employee for the ODMHSAS for five years and eight months.

18. Prior to working for ODMHSAS, Ms. Poff worked as a Social Services Investigator for DHS, where she investigated claims of fraud and employee misconduct.   During her work at DHS, Ms. Poff received positive reviews, raises, and promotions.

19. Ms. Poff began employment with ODMHSAS as the Inspector General in 2007.

20. While employed with ODMHSAS, Ms. Poff received two raises, five commendations for her performance, and an employee of the month award.

21. Prior to her termination, Poff was never disciplined, demoted or otherwise questioned with regard to her competency, quality or professionalism in the performance of her job.

22. Ms. Poff's duties as Inspector General were to investigate misconduct, not only within State Operated facilities, but also within management and staff of ODMHSAS.

23. Poff also supervised two Investigators, Michael DeLong and Jason Maddox.

24. Michael DeLong was suspended and terminated at the same time as Poff.

4

25. Jason Maddox remained employed as an Investigator and was eventually appointed to the Inspector General after Poff was terminated.

26. The reason provided for Ms. Poff's termination was that she allegedly breached confidentiality on investigations.

27. No reasons were given by ODMHSAS for the termination of Mr. Delong. However, on information and belief ODMHSAS now alleges that Mr. DeLong attempted to intimidate a witness.

28. Ms. Poff adamantly denies any claim that she behaved in such a manner.

29. Poff also has no reason to believe that DeLong acted in any way to intimidate a witness.

30. Poff believes that DeLong was terminated because he supported her with regard to certain actions taken by the leadership within ODMHSAS.

31. Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner (hereinafter "Leadership") were viewed by the employees, including Plaintiff, within the Inspector General's Office, as the "Leadership" of the Department and often colloquially referred to these individuals, either jointly or individually, as Leadership.

32. During the course of her employment with ODMHSAS, Poff was involved with the investigation of several high profile matters within the Department. Specifically, Poff investigated complaints made by employees at the ODMHSAS against high profile employees within the department and the investigation related to the NARCONON Arrowhead facility wherein three died while undergoing drug treatment.

33. On information and belief, Defendant Durand Crosby and Defendant Dewayne Moore have a personal friendship and relationship that preceded their employment with ODMHSAS, and that relationship clouds their judgment with respect to the conduct of

5

the other and created an environment where any misconduct of one of them was overlooked by the other.

34. During Ms. Poff's employment with the Department, employees made allegations of sexual misconduct against General Counsel Dewayne Moore regarding an alleged affair between Mr. Moore and a member of his staff who Mr. Moore directly supervised.

35. A third party sexual harassment claim was made to Mr. DeLong regarding alleged preferential treatment shown to the direct report of Mr. Moore. The complaint alleged that there was a quid pro quo sexual harassment environment created by the conduct and the resulting promotion of the employee involved in the affair and a hostile work environment. Mr. DeLong reported the claim to Ms. Poff.

36. On information and belief, Mr. Moore received favorable treatment, with regard to claims of direct and third party sexual harassment made against him than that which would have been afforded to other employees because of his longstanding friendship with Mr. Crosby.

37. Poff, as an Inspector General with ODMHSAS, has legitimate knowledge of complaints against NARCONON Arrowhead, a drug treatment facility affiliated with the Church of Scientology, which operates in the McAlester area and is licensed by the State of Oklahoma ODMHSAS.

38. Ms. Poff & Mr. DeLong, were tasked with investigating complaints arising out of the death of the individuals who were in the drug treatment at the Oklahoma NARCONON Facility.

39. As a result of their investigation, Ms. Poff and Mr. DeLong determined that the NARCONON facility violated numerous state laws and recommended to leadership that

6

the facility be shut down by ODMHSAS. Ms. Poff's report to Leadership was finalized in the summer/fall of 2012.

40. Despite the finalization of this report, Leadership at ODMHSAS including Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner attempted to hide the findings of Ms. Poff and Mr. DeLong by telling Ms. Poff to advise the Board of Directors for ODMHSAS that the report and investigation were still pending

41. On information and belief, Leadership at ODMHSAS including Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner buried the report, recommendations and findings of Ms. Poff & Mr. DeLong because the Department did not want to get involved with litigation involving the Church of Scientology.

42. Ms. Poff & Mr. DeLong were very vocal in 2012 and 2013 about their objection to ODMHSAS's decision to bury the report and Ms. Poff believes her objection to the decision to bury the findings of the NARCONON investigation directly relate to her termination by the Department.

43. No reason was given for Mr. DeLong's termination. In a letter received from the attorney for ODMHSAS, the Department claimed that Mr. DeLong attempted to intimidate a witness.

44. The alleged act of intimidation arose out of Mr. DeLong standing in the back of the room at a training seminar where the "witness," who was an employee of ODMHSAS, was putting on a training class.

45. The "witness" in question was on suspension from ODMHSAS. On information and belief, the "witness" was the only employee of ODMHSAS, during the tenure of Ms. Poff

or Mr. DeLong, to be allowed to work or to teach such a seminar while also on suspension for suspected illegal conduct.

46. The investigation into the sexual harassment involving the suspended employee "witness" was allegedly being conducted by an outside party because of a long standing friendship between Ms. Poff and the employee victim of sexual harassment.

47. Ms. Poff asked for the independent investigation to insure that her friendship did not act to bias the outcome of the investigation. Therefore, neither Ms. Poff nor her employees, including Mr. DeLong, were investigators on this sexual harassment case.

48. Mr. DeLong's mere act of being in a room with an alleged offender, when he was not acting in his capacity as an investigator in the sexual harassment case and he was merely observing the training, do not rise to the level of witness intimidation.

49. The conduct of Mr. DeLong, if wrongful in any manner, does not rise to the level of termination given his past history of stellar performance within the Department and supports the determination that the termination of DeLong was pretextual.

50. Further, no complaints were made to Mr. DeLong's Supervisor Kim Poff regarding any alleged wrongdoing by him in the course and scope of an investigation.

51. Given that Ms. Poff was Mr. DeLong's direct supervisor, it is also easy to infer that the firing of Mr. DeLong was directly related to the firing of Ms. Poff, which is also wrongful and illegal in violation of state and federal law.

52. Contemporaneously herewith, Mr. DeLong has also filed a petition against all named Defendants herein for wrongful termination, gender/sex and age discrimination, retaliation, negligence, conspiracy and any and all other causes of action which are relevant under the circumstances.

53. Ms. Poff and Mr. DeLong adamantly deny any claim that he attempted to intimidate a witness and claims that the ODMHSAS fired him in an attempt to cover up an ongoing pattern of wrongful conduct occurring within the Department.

## RETALIATION DISCRIMINATION

54. Ms. Poff was terminated on August 23, 2013 from Oklahoma Department of Mental Health & Substance Abuse Services (ODMHSAS), because of her knowledge of case sensitive information, which illustrates several improprieties within ODMHSAS.

55. Ms. Poff and Mr. Delong had issued findings from investigations that at times directly contradicted Leadership's desired outcomes. As a result, Mr. Crosby made numerous suggestions to Ms. Poff, that she should alter her original findings to suit the Leadership's preferences.

56. Ms. Poff knows that the Department was suppressing the investigative report on NARCONON, and further knows the details of the sexual harassment complaints involving General Counsel Dewayne Moore made by individuals other than the employee with whom Mr. Moore was having an affair with.

57. Concerning NARCONON, the families of Gabriel Graves (CJ-2012-295), Hillary Holten (CJ-2012-224), and Stacy Murphy (CJ-2012-265) have all filed suit against NARCONON of Oklahoma Inc., and Oklahoma Corporation, d/b/a NARCONON Arrowhead; Narconon International, a Foreign Corporation; Association For Better Living And Education International, a Foreign Corporation; and Gerald Wootan, DO, M.Ed in the District Court of Pittsburg County for the wrongful death of these individuals.

9

58. Ms. Poff, Inspector General, determined that NARCONON violated numerous state laws and recommended that the facility be shut down by ODMHSAS.

59. In the summer/fall of 2012, Ms. Poff finalized the reports, findings and recommendation of the investigation into NARCONON.

60. Despite this recommendation and finalization of the reports, Leadership at ODMHSAS, including Terri White, Dewayne Moore and/or Durand Crosby, had Ms. Poff repeatedly advise the Board of Directors for ODMHSAS that the investigation was still pending.

61. Ms. Poff believes she was directed to do this because the leadership at ODMHSAS was afraid to take on NARCONON in litigation because there is significant financial backing of the facility by the church of Scientology.

62. Chief Operating Officer, Durand Crosby, began to alter the way information from investigations was submitted. This was a direct attempt to prevent the Inspector General's Office from having any autonomy in reporting the investigative findings.

63. Ms. Poff was also very vocal in 2012 and 2013 regarding her objection to the position of ODMHSAS to bury the report. Ms. Poff & Mr. DeLong believed that by not releasing the report, the ODMHSAS failed to protect the interest of Oklahomans at the facilities in the past, present, and future. We believe this position played significantly into the decision of the department to terminate their employment.

64. Leadership terminated Ms. Poff & Mr. DeLong in an attempt to orchestrate investigations and manipulate outcomes to its desired conclusion, to protect the department from media and governmental scrutiny, and to show it in the best possible light.

65. When Ms. Poff refused to bow to the demands to manipulate investigative findings, Leadership decided to render the Inspector General's office powerless by terminating the

10

two most senior members of the department, Ms. Poff and Mr. Delong, and placing an investigator with four months of experience in charge of these sensitive investigations.

66. Ms. Poff engaged in whistleblowing activity by reporting the inappropriate and potentially illegal conduct within the office of ODMHSAS and upon doing so, Leadership at the department retaliated by terminating her employment. This is illegal.

67. As a result of the retaliatory discharge and the other wrongful acts of the Defendants, Ms. Poff has suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering

## AGE DISCRIMINATION

68. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 – 67 as if fully set forth herein.

69. ODMHSAS developed a master's degree program for its employees which paid for them to obtain an advanced degree to further their employment within the department.

70. Ms. Poff was not offered the opportunity to participate in the program.

71. At the time of the alleged discrimination Ms. Poff was 44 years old.

72. Ms. Poff was directly excluded from the program based on her age.

73. When Ms. Poff asked HR Director Ellen Buettner why she was excluded, Ms. Buettner stated that "she knew that Ms. Poff was eligible to retire in six years, and leadership did not even consider her because they 'just thought' she wasn't interested."

74. This is prima facie evidence of discrimination based upon age and the pretextual nature of ODMHSAS's conduct towards Ms. Poff.

75. Counsel for ODMHSAS later alleged that Ms. Poff could move no higher in her employment with the department. However, that is clearly untrue.

11

76. If Ms. Poff had been given the opportunity to participate in the Master's Degree Program she could have had the opportunity to obtain a Master's Degree in Public Health, Master of Arts or Master's Degree in Business Administration, Social Science or a related field which in conjunction with her years of supervisory experience as the Inspector General would have qualified her to serve as the Commissioner of the ODMHSAS. 43A O.S. §2-201.

77. Additional education may have also made Ms. Poff eligible for positions such as Director of Human Relations, Chief Operating Officer and/or other high ranking positions within the Department.

78. Oklahoma law allows ODMHSAS to pay for certain education for its employees. However, there is no requirement that the advanced education move the employee into a higher ranking position in order to be eligible to receive said training. The only requirement is that the employee enters into a contract agreeing to work for the Department for and an equivalent period of time or that the cost of the training will be reimbursed to the Department. 43 A O.S. § 2-214.

79. Ms. Poff was denied the opportunity to participate in this program when similarly situated younger male employees were allowed to participate in the program.

80. This constitutes discrimination on the basis of age and sex and violates the Civil Rights Act of 1964.

81. As a result of the age and sex discrimination and the other wrongful acts of the Defendants, Ms. Poff has suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

## SEX DISCRIMINATION

82. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 - 81 as if fully set forth herein.

83. Ms. Poff was also treated differently than four other male employees facing similar investigations and suspensions.

84. In each of the four instances of male employees being investigated, the male employees had multiple allegations against them of severe misconduct that included falsification of documents, fraud, hostile, offensive, and intimidating work environment, sexual harassment, consumer abuse, racial and sexual discrimination and other inappropriate conduct.

85. However, in each of these 4 employees' circumstances they were disciplined and not fired.

86. None of these employees were treated as harshly as Ms. Poff has been treated.

87. As a result of the age and sex discrimination and the other wrongful acts of the Defendants, Ms. Poff has suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

## 42 U.S.C. VIOLATIONS OF CONSTITUTIONAL RIGHTS

88. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1-87 as if fully set forth herein.

89. Defendants are government/state actors subject to the prohibitions contained in the 1st Amendment of the U.S. Constitution, Article 2 Sections 3 and 22 of the Oklahoma Constitution, and 42 U.S.C. § 1983.

90. On information and belief, the Defendants, each and all of their justification for terminating Plaintiff was in part based upon the Plaintiff's exercise of her freedom of speech when she reported the inappropriate and potentially illegal conduct happening within the office of ODMHSAS.

91. The Defendants, ODMHSAS, the Board of Directors for the ODMHSAS, Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner, acting in either their individual capacity and/or in their capacity as employees and directors of the ODMHSAS, retaliated against Plaintiff for exercising her right to free speech under the 42 U.S.C. §1983 and the United States and Oklahoma Constitutions.

92. This retaliation occurred when she made statements on a matter of public concern including the inappropriate and potentially illegal conduct occurring within the Department and the failure of the Department and Leadership to take action on the dangerous and illegal activity occurring at the NARCONON facility.

93. As a result of the conduct of the ODMHSAS, the Board of Directors for the ODMHSAS, Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner, acting in either their individual capacity and/or in their capacity as employees and directors of the ODMHSAS, Plaintiff Kimberly Poff has suffered injuries and damages for lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

## 42 U.S.C. §1983 DUE PROCESS VIOLATIONS

94. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 - 93 as if fully set forth herein.

14

95. Each of the Defendants, while acting "under color of state law", the Board of Directors for ODMHSAS and ODMHSAS by and through Terri White individually and as the Commissioner of ODMHSAS, Dewayne Moore, Durand Crosby and/or Ellen Buettner acting in either their individual capacity and/or in their capacity as employees and directors of the ODMHSAS, intentionally deprived Ms. Poff of her rights under the Constitution of the United States of America and the State of Oklahoma, by and through violation of the Due Process Clause of the Fourteenth Amendment by denying her procedural due process before terminating her.

96. Ms. Poff as an employee of the State of Oklahoma, ODMHSAS, had a property interest in her job.

97. Prior to being terminated from her job, Ms. Poff was entitled to due process through the right to notice and opportunity to be heard regarding the allegations against her.

98. The only process given to Ms. Poff consisted of Ms. Poff being notified of her termination. No further appeal or process was given to Ms. Poff to challenge the unfounded allegations against her.

99. This is not sufficient to meet the standards for procedural due process requirements under the United States or Oklahoma Constitutions.

100. As a result of the violation of his procedural due process rights Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

## **NEGLIGENCE AND NEGLIGENT TRAINING AND SUPERVISION**

101. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 - 100 as if fully set forth herein.

15

102. The ODMHSAS by and through its Board of Directors and Commissioner Terri White failed to hire, train and supervise its Leadership employees to ensure that they knew and understood the law with regard to the hiring, reviewing, disciplining and terminating employees for alleged misconduct.

103. The ODMHSAS, by and through its Board of Directors and Commissioner Terri White, was negligent when it failed to fully and adequately investigate the allegations of sexual harassment and sexual misconduct involving high ranking Department employees. The ODMHSAS then subsequently terminated Ms. Poff and Mr. DeLong for vocalizing their objection to the preferential treatment shown to the high ranking employees to the detriment of other employees who also had harassment claims relating to the conduct.

104. As a result of the negligence of the Defendants Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

## VIOLATION OF OKLAHOMA PUBLIC POLICY

105. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 - 104 as if fully set forth herein.

106. Plaintiff is an at will employee but as a governmental employee has a property interest in her job.

107. The actions of Defendants violate Oklahoma Public Policy and Oklahoma Statutory law.

108. The remedies available to Plaintiff under the Federal law are not adequate to address the injuries and damages he suffered as a result of the conduct of his employer's illegal and wrongful conduct.

16

109. On November 1, 2011, 25 O.S. § 1350 went into effect creating a statutory remedy for employment-based discrimination and Ms. Poff has a claim against the Defendants under the same.

110. As a result of the negligence of the Defendants, Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

## VIOLATION OF THE WHISTLEBLOWER ACT

111. Ms. Poff's investigations into NARCONON and repeated instances of sexual harassment by high ranking employees in the ODMHSAS are protected under the Oklahoma Whistleblower Act.

112. This Act, 74 O.S. § 840-2.5, which provides protection to classified and unclassified state employees who report any wrongful governmental activities. It also dissuades retaliation against a state employee who reports such activities.

113. As a result of the negligence of the Defendants, Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

## CIVIL CONSPIRACY

114. Plaintiff hereby adopts and realleges all allegations in paragraphs 1 - 113 as if fully set forth herein.

115. On information and belief, Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner, acting in either their individual capacity and/or in their capacity as employees and directors of the ODMHSAS, jointly, unlawfully and illegally conspired to suppress the results of the investigation of the Inspector General's Office with regard to their

17

findings in the investigation into the deaths of three individuals while receiving drug treatment at NARCONON Arrowhead, a facility dully licensed by the ODMHSAS.

116. On information and belief, Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner, acting in either their individual capacity and/or in their capacity as employees and directors of the ODMHSAS, jointly, unlawfully and illegally conspired to suppress or interfere with the investigation of direct and/or third party sexual harassment claims that arose as a direct result of the affair between Dewayne Moore, General Counsel and his subordinate employee.

117. The conduct of Terri White, Dewayne Moore, Durand Crosby and/or Ellen Buettner is illegal and amounts to a civil conspiracy which is unlawful and gives rise to a claim for damages by the Plaintiff.

118. As a result of the civil conspiracy and the wrongful acts of the Defendants Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

WHEREFORE, Plaintiff Kimberly Poff demands judgment in her favor and against the Defendants, the Board of Directors for the Oklahoma Department of Health and Substance Abuse Services, the State of Oklahoma ex rel. the Oklahoma Department of Health and Substance Abuse Services, Terri White Commissioner and Chief Executive Officer of the Oklahoma Department of Health and Substance Abuse Services, Durand Crosby, Chief Operating Officer of the Oklahoma Department of Health and Substance Abuse Services, Cratus Dewayne Moore, General Counsel of the Oklahoma Department of Health and Substance Abuse Services, and Ellen Buettner, Director, Human Resources Management, Human Resources Development, individually and in their official capacity in an amount in excess of $75,000.00for

18

their wrongful, improper and illegal conduct. Plaintiff requests that she be awarded her lost wages, damages for lost benefits, damage to reputation, damages for emotional distress and mental suffering, and punitive damages. Plaintiff further requests that the Court award her the costs and attorney's fees associated with this suit and any and all other relief that the Court deems just and equitable.

Respectfully submitted,

Rachel L. Bussett, OBA 19769
Bussett Law Firm, PC
3555 N.W. 58th St., Suite 1010
Oklahoma City, OK 73112
405-607-4885
405-601-7765
Rachel@bussettlaw.com

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

19

00299

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER,** a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. **Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)**

### 1. Personal Information

Last Name: Poff                              First Name: Kimberly                              MI: M.

Street or Mailing Address: _____    Apt or Unit #: _____

City: _____    County: Oklahoma    State: OK    Zip: _____

Phone Numbers: Home: (405) _____    Work: (____) _____

Cell: (405) _____    Email Address: _____

Date of Birth: _____    Sex: ☐ Male ☒ Female    Do You Have a Disability? ☐ Yes ☒ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race?  Please choose all that apply. ☐ American Indian or Alaskan Native  ☐ Asian  ☒ White

☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? _____

**Please Provide The Name Of A Person We Can Contact If You Are Unable To Reach You:**

Name: Rachel Bussett                              Relationship: attorney

Address: 3555 NW 58th St., Ste. 1010    City: Oklahoma City    State: OK    Zip Code: 73112

Home Phone: (405) 605-8073    Other Phone: (405) 601-7764 fax

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**
Organization Name: Oklahoma Department of Mental Health & Substance Abuse Services

Address: 1200 NE 13th St.                              County: Oklahoma

City: Oklahoma City    State: OK  Zip: ____    Phone: (405) 522-3908

Type of Business: State Agency    Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: Ellen Buettner    Phone: (405) 522-5106

**Number of Employees in the Organization at All Locations:** Please Check (✓) One

☐ Fewer Than 15    ☐ 15 – 100    ☐ 101 – 200    ☐ 201 – 500    ☒ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) **Are you a federal employee?** ☐ Yes ☐ No

Date Hired: 12/17/2007    Job Title At Hire: Inspector General

Pay Rate When Hired: _____    Last or Current Pay Rate: _____

Job Title at Time of Alleged Discrimination: same    Date Quit/Discharged: 8/23/13

Name and Title of Immediate Supervisor: Terri White, Commissioner

If Job Applicant, Date You Applied for Job _____ Job Title Applied For

**EXHIBIT**
**1**

1

**4.  What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race  ☑ Sex  ☑ Age  ☐ Disability  ☐ National Origin  ☐ Religion  ☑ Retaliation  ☐ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; circle which type(s) of genetic information is involved:
i. genetic testing    ii. family medical history    iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain): _____

**5.  What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

**A.  Date:** 8/23/13            **Action:**  I was terminated from my employment on this date.  I was suspended from my employment on August 6, 2013.  My employer alleged at one point that I revealed confidential information during my investigations and could not conduct an unbiased investigation.  I believe that I was terminated because I was vocal about the failure of management to take action on high profile matters within our dept.

**Name and Title of Person(s) Responsible:** Durand Crosby and Terri White

**B.  Date:** various            **Action:**  I was denied the opportunity to participate in a program which would pay for me to obtain an advanced degree which would help further my skills and employment with the agency.  I was told that they knew I would be retiring in a few years so they assumed that I wouldn't be interested.  They funded 3 individuals younger than me in obtaining their education.

**Name and Title of Person(s) Responsible** Durand Crosby and Ellen Buettner

**6.  Why do you believe these actions were discriminatory?  Please attach additional pages if needed.**

see attached.

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**

My employer alleged at one point that I revealed confidential information during my investigations and could not conduct an unbiased investigation.

**8.  Describe who was in the same or similar situation as you and how they were treated.**  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. see attached. | | | |
| | | | |
| B. | | | |
| | | | |

2

**Of the persons in the same or similar situation as you, who was treated _worse_ than you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|---------------------------------------------------------|-----------|--------------------------|

A. none.

B.

**Of the persons in the same or similar situation as you, who was treated the _same_ as you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|---------------------------------------------------------|-----------|--------------------------|

A. Michael DeLong Male, Investigator, Michael was also fired. He directly reported to me. I believe he was fired because he was loyal to me and knew that I had done nothing wrong. I believe ODMHSAS retaliated against him.

B.

**Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.**

**9. Please check all that apply:**
- ☐ Yes, I have a disability
- ☐ I do not have a disability now but I did have one
- ☑ No disability but the organization treats me as if I am disabled

**10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

**11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
☐ Yes ☑ No
If "Yes," what medication, medical equipment or other assistance do you use?

**12. Did you ask your employer for any changes or assistance to do your job because of your disability?**
☐ Yes ☑ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for: _____

How did your employer respond to your request? _____

3

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|

A. Jeff Smith - 405-412-7183 Mr. Smith has told me that this situation was a "witch hunt" & that the department leadership wanted "witnesses to their bullshit to go away"

B. Travis Kirkpatrick Mr. Kirkpatrick is aware that as an individual I was not offered the educational opportunity. He is also aware that the division as a whole was not offered the opportunity to participate. In addition, Mr. Kirkpatrick is aware of the disparate treatment against me in comparison to those listed above (Robert Harshaw, Randy May, James Bond and Dewayne Moore)

**14. Have you filed a charge previously on this matter with the EEOC or another agency?** ☐ Yes ☒ No

**15. If you filed a complaint with another agency, provide the name of agency and the date of filing:** _____

_____

**16. Have you sought help about this situation from a union, an attorney, or any other source?** ☒ Yes ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Rachel Bussett , attorney, 3555 NW 58th St., Suite 1010, OKC OK 73112, retained 8/2013
_____

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights.** If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

**BOX 1** ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

**BOX 2** ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____          12/16/2013
                 Signature                                  Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

#6. I believe the act of my termination was discriminatory/retaliatory because there is no merit to any allegations of wrongdoing. I was an exemplary state employee for 22 years with no previous performance issues. My attendance was stellar and by all accounts my division was an extremely successful working piece of the Department as a whole. I have received multiple commendations for my performance and received excellent feedback on a (fairly) recent agency wide survey. In addition, I have received 2 pay raises during my tenure with the Department. This incident occurred strictly because Leadership was attempting to cover up their lack of action in regards to the investigation related to Narconon and my focus on the allegations regarding General Counsel, Dewayne Moore. In addition, following several high profile investigations in which Leadership "disagreed" with our findings the Chief Operating Officer Durand Crosby began to try to change how we submitted information. This was a direct attempt to prevent us from having any autonomy in reporting our investigative findings. I was quite vocal about feeling that those changes were inappropriate.

#7. Terri White indicated that following the investigation there were several "concerns." She reports that it is believed that my office (the Office of Inspector General) can no longer conduct an objective investigation and that I breached confidentiality regarding an investigation. I was not a part of the investigation wherein they alleged confidentiality was breached so I'm not sure how I could have breached anything. Further, Leadership placed our office in the same office as the General Counsel's and required the Inspector General's office to share an Administrative Assistant. This effectively eliminated any confidentiality between the two offices.

#8 Sex (gender) discrimination:

Treated better:

Dewayne Moore, male, General Counsel - Allegations of misconduct were made against Dewayne Moore related to his personal relationship with his employee, _____. Dewayne was not placed on suspension, there was no investigation and he was not subject to any discipline. During this time, Mr. Moore also received a pay raise. _____ was given a position reporting directly to a Deputy Commissioner, a title change and a raise.

Robert Harshaw, male, Director of Nursing (Griffin Memorial Hospital) - Allegations of misconduct were made against Robert Harshaw related to retaliation and discrimination. An investigation was conducted; however, Mr. Harshaw was not placed on suspension. There were supported findings of both retaliation and discrimination against Mr. Harshaw but he was not disciplined. In fact, the reports were never "officially" approved and the findings were completely ignored. Mr. Harshaw was provided with documentation related to this investigation including his Rights and Responsibilities form and a copy of his recorded interview.

James Bond, male, Director of Human Resources Development – Allegations of misconduct were made against James Bond related to a sexual harassment claim. Mr. Bond was suspended. The investigation determined the allegations were supported. Mr. Bond was allowed to use approximately 4-5 months of his leave in order to continue to receive a paycheck and his medical/dental benefits for both himself and his teenage daughter. At the end of that period, Mr. Bond was allowed to resign.

_____, male, _____ – _____ was accused of both sexual harassment and consumer mistreatment. _____ was suspended for a period of over 4 months (April – August) during which time he continued to respond to email, work with Department staff, meet with community partners and represented the agency on behalf of the Deputy Commissioner at New Employee Orientation. It is my feeling that while _____ was ultimately released from

employment that was done solely because the decision had been made to terminate me and the Department wanted to look like it was acting equally. While Mr. DeLong and I were suspended we were not allowed to continue performing any aspect of our jobs.

Randy May, male, Executive Director of Griffin Memorial Hospital - Mr. May was previously investigated for discriminatory remarks/creating a hostile or intimidating working environment and the findings were supported. Mr. May was not disciplined and in fact, was subsequently made the Executive Director of Griffin Memorial Hospital. Several years later, Mr. May was investigated (again) following multiple reports of sexually inappropriate and/or discriminatory comments. The investigation determined Mr. May had in fact created a hostile working environment and he was released from employment. However, Mr. May was allowed to use leave, continue to receive medical/dental benefits for a period of time and was allowed to resign rather than being terminated from his employment. I was not allowed to serve out my leave time and I was terminated and never offered the opportunity to resign in lieu of termination.

Jeff Smith, male, Executive Director of the Children's Recovery Center – allegations were made against Mr. Smith related to destroying documents and creating a hostile working environment. Multiple policy violations were supported against Mr. Smith. It was decided to give Mr. Smith another chance and have him work under another director. He was given the Assistant Executive Director position at the Oklahoma County Crisis Intervention Center.

- I am unaware of anyone being treated "worse."

#8 Age discrimination:

Treated better:

Ellen Buettner, 27, Director of Human Resources Management/Development – Ms. Buettner is already the director of a division and has her Juris Doctor, however, she was given the opportunity to participate in the Master's program provided by the Department.

Heath Holt, approximately 30 years old - Mr. Holt had just graduated with his Master's degree in Human Relations but was still given the opportunity to participate in the Master's of Leadership program provided by the Department.

Jill Amos, 34, Ms. Amos was currently in a Master's program but was asked to participate in the Department's program. Ms. Amos declined.

Treated same - No one in my division was offered the opportunity to participate in this program.

Treated worse – I am not aware of anyone treated worse.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 564-2014-00279 |

| Oklahoma Attorney General's Office, Office of CR Enforcement | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Kimberly M. Poff** | | |

| Street Address | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **OKLAHOMA DEPT. OF MENTAL HEALTH & SUBSTANCE ABUSE SERVICES** | **500 or More** | **(405) 522-3908** |

| Street Address | City, State and ZIP Code |
|---|---|
| 1200 N.E. 13th St, Oklahoma City, OK 73152 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 04-15-2013 Latest 08-23-2013
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheets)

PLEASE SEE ATTACHED.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

1/14/14 *Kimberly Poff*
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

**EXHIBIT 2**

Kimberly Poff

Charge No. 564-2014-00279

Particulars of charge of discrimination:

I believe I have been retaliated and discriminated against because of my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended. On August 6, 2013, I was placed on suspension pending an investigation for alleged wrongdoing. On August 23, 2013, I was terminated from my position as the Inspector General for alleged misconduct. I believe I was subjected to unequal terms and conditions during this suspension and subsequent discharge. At least five (5) high ranking male personnel, who were similarly situated at the Department, and who were subject to similar allegations of misconduct related to their employment, were treated better than I was by either not being terminated and having only some discipline imposed and/or being allowed to resign in lieu of termination and to receive certain benefits prior to resigning their position.

Additionally, I believe my discharge occurred and I was retaliated against because I was vocal about the failure of management to take action on high profile matters within the Department. Specifically, alleged third party sexual harassment claims regarding a hostile work environment and belief of quid pro quo advancement within the Department arising out of the affair between General Counsel, Dewayne Moore and a subordinate co-worker.

I believe I have been discriminated against because of my age (45) in violation of the Age Discrimination in Employment Act of 1967, as amended. I was denied the opportunity to participate in a Department sponsored Master's program. It was indicated to me by Human Resource Director Ellen Buettner, that I was close to retirement so they didn't' think I would be interested. Other individuals in similar high ranking positions and who were the heads of their departments such as Ellen Buettner and Durand Crosby , were allowed to participate in the program or receive payment for their education when I was not.

I believe I have been retaliated and discriminated against because of my sex (Female) in violation of Title VII of the Civil Rights Act of 1964, as amended and I have been discriminated against because of my age (45) in violation of the Age Discrimination in Employment Act of 1967, as amended.

Kimberly M. Poff

* EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Kimberly M. Poff**<br>216 Gill Dr<br>Midwest City, OK 73110 | From:  **Oklahoma City Area Office**<br>215 Dean A. McGee Avenue<br>Suite 524<br>Oklahoma City, OK 73102 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **564-2014-00279** | **Donna G. Smith,**<br>**Investigator** | **(405) 231-4361** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional Information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination In Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

*Equal Pay Act (EPA):*  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*Donna D. Smith* (signature)

**Holly Waldron Cole,**
**Area Office Director**

May 07, 2014
*(Date Mailed)*

Enclosures(s)

cc:   **Hilary S. Allen, Attorney**
**OKLAHOMA DEPT. OF MENTAL HEALTH &**
**SUBSTANCE ABUSE SERVICES**
**920 North Harvey**
**Oklahoma City, OK 73102**

**Rachel Bussett**
**BUSSETT LAW FIRM, P.C.**
**3555 N.W. 58th St, Suite 1010**
**Oklahoma City, OK 73112**

**EXHIBIT**
**3**

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**B**USSETT
*Law Firm, P.C.*
***Curtis W. Bussett***
***Rachel L. Bussett***

**3555 NW 58th St. Suite 1010**
**Oklahoma City, OK  73112**
**Phone:  (405) 605-8073**
**Fax:  (405) 601-7764**
**www.BussettLaw.com**

June 6, 2014

Office of the Risk Management Administrator
Office of Management and Enterprise Services
2401 N. Lincoln Blvd., Room 202
Oklahoma City, Oklahoma 73105

Office of the Risk Management Administrator
Office of Management and Enterprise Services
P.O. Box 53364
Oklahoma City, Oklahoma 73152

**RE:   Notice of Tort Claim against the State of Oklahoma and Ok. Dept. of Mental Health**
**& Substance Abuse Services.**

Our Clients:          Kimberly Poff
County Entity:        Ok. Dept. of Mental Health & Substance Abuse Services
Date of Accident:     August 23, 2013

To Whom It May Concern:

Please be advised that Ms. Kimberly Poff has retained my office to represent her in an action against the Ok. Dept. of Mental Health & Substance Abuse Services (ODMHSAS), by and through the State of Oklahoma, for damages sustained as a result of her wrongful termination on August 23, 2013. Pursuant to 51 O.S §156, this letter will serve as a Notice of Tort Claim filed against the State of Oklahoma, Oklahoma Department of Mental Health & Substance Abuse Services, arising under a claim within the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151. Please contact the undersigned attorney at the Bussett Law Firm, P.C. to resolve this claim.

**Description of the Incident:**
Ms. Poff has been an employee of the State of Oklahoma for 22 years. For 5 years, 8 months she has worked for the ODMHSAS. Prior to her employment with ODMHSAS, she was employed by DHS as a Social Services Investigator, where she investigated claims of fraud and employee misconduct. During her time with DHS she received regular positive reviews, raises, and promotions. In 2007, she came to work for ODMHSAS as the Inspector General. During her tenure at ODMHSAS, she has received two raises, five commendations for her performance, and an employee of the month award. She has never been disciplined, demoted or otherwise questioned with regard to her competency, quality or professionalism in the performance of her job. The punishment imposed for the alleged infractions are not merited given her long and outstanding job performance.

1



EXHIBIT
4

Ms. Poff's job as the Inspector General at ODMHSAS is to investigate allegations of misconduct, discrimination, and consumer abuse and to report the outcome of her investigation to Leadership and ODMHSAS Board. As Inspector General, it was Ms. Poff's job to investigate misconduct not only within State Operated facilities but also within management and staff of the ODMHSAS. Over the last five years, Ms. Poff has been privy to numerous confidential investigations and inquiries and at no time has she inappropriately divulged confidential information or used such information for her own gain.

In 2011, Mr. Durand Crosby made the decision to move the Office of the Inspector General from their offices which were located in the same building, but in a separate private space, into the offices of the Legal Division. Mr. Crosby also made the decision that the Inspector General and her staff would share support staff with the legal division. Once the two offices were combined, there was no way to maintain "confidentiality" of investigations between the two divisions. In fact, confidential information regarding cases with the Inspector General's Office and the Legal Division were discussed freely and Leadership encouraged this free flow of information between the two departments. Ms. White alleges that Ms. Poff merits termination because she breached confidentiality on investigations. However, Ms. Poff denies discussing any confidential information regarding any of her current or former investigations outside of the environment that Mr. Crosby and ODMHSAS Leadership created for her to work in. Further, to the extent that the allegations related to the investigation of sexual harassment against          , neither Ms. Poff nor her investigator was in charge of this investigation. Therefore, she could not breach confidentiality of an investigation that she was not working on.

There has existed within Central Office a culture of gossip and key employees freely discussing confidential information. The Central Office is made up of the Executive Leadership, Legal Division, Human Resources, Finance, Inspector General's Office, and other departments located at the 13th Street Office and the Shepherd Mall Office. For example, allegations were made regarding alleged sexual misconduct between Dwayne Moore, the General Counsel of the ODMHSAS, and          who was an          working directly under his supervision. The misconduct was well known and freely discussed among the employees. This matter was swept under the rug with Mr. Moore receiving no discipline and given a raise, while          was transferred into a new position which was created specifically for her and was given a raise.  Other employees complained to Investigators, with the Inspector General's office, about the quid pro quo environment at the office and a hostile environment created by the sexual relationship between the General Counsel and          .  There was never a full and independent investigation into the allegations which were well-known among the Staff of the Department. In fact, it is generally believed that ODMHSAS Leadership covered up the transgressions and bought off a complaint of harassment by moving the employee to a better job. This is but one example of the way in which gossip and other information traveled through the Central Office and of conduct exhibited by key leadership employees with ODMHSAS with regard to favored employees.

Ms. Poff has been treated significantly less favorably compared to male employees of ODMHSAS who underwent similar investigations and suspensions. At least four other male management employees, in addition to the one above, had multiple allegations against them of severe misconduct that included falsification of documents, fraud, hostile, offensive, and

2

intimidating work environment, sexual harassment, consumer abuse, racial and sexual discrimination and other inappropriate conduct. Yet, none of these employees were treated as harshly as Ms. Poff has been treated.

There are many other examples of less favorable treatment of Ms. Poff in comparison to other employees. Approximately one to two years ago, ODMHSAS developed a master's degree program for employees. Not only was Ms. Poff not offered an opportunity to participate despite asking Terri White about it, she was directly excluded from consideration based upon her age. Ms. Poff was 44 years old years old at the time of the discrimination. Under the existing retirement rule of 80, Ms. Poff would first be eligible for retirement effective October 2019. When Ms. Poff asked HR Director Ellen Buettner why she was excluded, Ms. Buettner stated that "she knew that Ms. Poff was eligible to retire in six years, and leadership did not even consider her because they 'just thought' she wasn't interested." This is clearly age discrimination. Ms. White, who would have been among the "Leadership" making the decision, specifically knew that Ms. Poff was interested in this program, yet Ms. Poff was *excluded specifically because she was close to retirement age*.

The investigation, suspension, and termination of Ms. Poff are the culmination of a systematic and intentional attempt to eliminate agency oversight of Leadership's decisions. Ms. Poff has issued findings regarding her investigations that have, at times, directly contradicted Leadership's desired outcomes. On several occasions, it has been suggested to Ms. Poff, by Mr. Crosby, that she change her findings when he disagreed with the outcome that she reached. Ms. Poff does not dispute the right of the Legal Department or Leadership to make the decision whether to pursue certain findings, but Ms. Poff disputes the authority of Mr. Crosby, or others, to order her to change the outcome or findings of her investigations.

Ms. Poff has legitimate knowledge of recent cases involving high profile respondents and sensitive allegations against executive management members. For example, Ms. Poff knows that the department is/was suppressing the investigative report on NARCONON and knows the details of the sexual harassment complaints involving General Counsel Dewayne Moore. We believe this information is being suppressed because Mr. Moore is a personal friend of Mr. Crosby, and the department is afraid that NARCONON will file a lawsuit against it if the department takes the lawful and moral action to shut the center down. We believe that ODMHSAS's desire to suppress this knowledge resulted in the investigation into trivial accusations of alleged wrongdoings by Ms. Poff and created the pretext for wrongful termination.

With regard to the NARCONON matter, the families of Gabriel Graves (CJ-2012-295), Hillary Holten (CJ-2012-224), and Stacy Murphy (CJ-2012-265) have all filed suit against NARCONON Of Oklahoma, Inc., an Oklahoma Corporation, d/b/a NARCONON Arrowhead; Narconon International, a Foreign Corporation; Association For Better Living And Education International, a Foreign Corporation; and Gerald D. Wootan, DO, M.Ed. in the District Court of Pittsburg County for the wrongful death of these individuals. As Inspector General, Ms. Poff investigated the activities of NARCONON to determine if the facility violated state law in caring for these and other individuals. Ms. Poff and her investigators determined that NARCONON

violated numerous state laws and recommended that the facility be shut down by ODMHSAS. Ms. Poff and her staff finalized their report and recommendations in the summer/fall of 2012. Despite this recommendation and finalization of the reports, Leadership at ODMHSAS, including Terry White, Dwayne Moore and Durand Crosby, had Ms. Poff repeatedly advise the Board of Directors for ODMHSAS that the investigation was still pending. Ms. Poff believes she was directed to do this because the leadership at ODMHSAS was afraid to take on NARCONON in litigation because there is significant financial backing of the facility by the church of Scientology. Ms. Poff was very vocal in 2012 and 2013 regarding her objection to the position of ODMHSAS to bury the report. Ms. Poff believed that by not releasing the report, the ODMHSAS failed to protect the interest of Oklahomans at the facilities in the past, present, and future. We believe this position played significantly into the decision of the department to terminate her employment along with the employment of one of her investigators.

Leadership claims that the Inspector General's office is no longer able to conduct unbiased investigations without an agenda. However, Leadership is terminating Ms. Poff, and others, in an attempt to orchestrate investigations and manipulate outcomes to its desired conclusion, to protect the department from media and governmental scrutiny, and to show it in the best possible light. When Ms. Poff and her investigators refused to bow to the demands of manipulated investigations, Leadership decided to render the Inspector General's office powerless by terminating the two most senior members of the department and placing an investigator with four months of experience in charge of these sensitive investigations. This is discriminatory and unlawful.

**Names of any and all known witnesses to the incident:**
1. Michael DeLong, former Investigator with ODMHSAS
2. Terry White, Commissioner ODMHSAS
3. Durand Crosby, Chief Operating Officer ODMHSAS
4. Robin Wilson, Assistant General Counsel
5. Ellen Buettner, Director of Human Resources
6. Jeff Smith, former Director of Youth Center and Oklahoma County Crisis Intervention Center
7. Deneca Turney-Cain, Advocate General
8. David Milness, Contracted Investigator for ODMHSAS
9. Jill Amos, employee of ODMHSAS
10. Allen Shaffer, Assistant General Counsel with ODMHSAS
11. Dwayne Moore, General Counsel
12. Travis Kirkpatrick, former investigator with ODMHSAS
13. Jason Maddox, current Inspector General with ODMHSAS
14. Neil Gagle, former administrative Assistant with ODMHSAS
15. Christina Claire, former Administrative Assistant with ODMHSAS
16. Chris Flanagan, Interim Director of Oklahoma County Crisis Intervention Center
17. Heath Holt, employee of ODMHSAS
18. Hannah Cable, Assistant General Counsel with ODMHSAS

4

**Location (Address), Date and Time of the Incident:** Ms. Poff was terminated from ODMHSAS, located at 1200 Ne 13th St, Oklahoma City, OK, US, 73117, on August 23, 2013.

**Claimant's Names, Address, Phone Numbers:**   Kimberly Poff,

**Estimate of the Damages:** In excess of $500,000.00

**Attachments:**

Exhibit 1 -      EEOC Right to Sue Letter
Exhibit 2 -      EEOC Intake Questionnaire
Exhibit 3 -      EEOC Charge
Exhibit 4 -      Demand Letter
Exhibit 5 -      Letter to Board of Directors for ODMHSAS

**Parties/Agencies Involved:** State of Oklahoma and Oklahoma Department of Mental Health & Substance Abuse Services and its agents and employees.

**Name, Address, Telephone Number of Authorized Agent to Settle Claim:** Bussett Law Firm P.C., 3555 NW 58th street Ste. 1010, Oklahoma City, Oklahoma, 73112 (405)-607-4885

If you have any questions or need any additional information, please do not hesitate to contact me. I can be reached at the number listed above or via email at Rachel@bussettlaw.com.

Sincerely,

Rachel Bussett

CC Kimberly Poff

**Preston L. Doerflinger**
Director and Secretary of
Finance, Administration and
Information Technology



**State of Oklahoma**
Office of Management and Enterprise Services

July 29, 2014

Rachel L. Bussett
BUSSETT Law Firm, P.C.
3555 NW 58th St. Suite 1010
Oklahoma City, OK 73112-4730

RE:    Tort Claim of:        Kimberly Poff
Risk Management No:      1420014183

Dear Ms. Bussett:

The Office of the Oklahoma Attorney General has completed the process of evaluating the above-referenced tort claim. After careful consideration of the facts, your client's claim is hereby denied. The basis for the denial of your client's claim includes, but is not limited to: 51 O. S. § 155 (5 and 30).

The state or a political subdivision shall not be liable if a loss or claim results from:

5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees.

30. Acts or omissions done in conformance with then current recognized standards.

Further, a determination has been made that the State of Oklahoma was not negligent in this matter.

Your client's claim is denied as of July 29, 2014. No action for any cause arising under the Act shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim. Please be advised that this letter does not extend the statutory time limits prescribed by the Governmental Tort Claims Act.

You have the right, under Oklahoma law, to differ with the decision to deny your client's tort claim. The right to seek compensation by suit in District Court may be restricted by the limitations period prescribed by law.

Sincerely;

Adriano Coronel

Adriano Coronel
MMSEA Specialist & Liability Advisor
Oklahoma Risk Management Department

**EXHIBIT**

**5**