# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMBERLY POFF, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| | ) | Case No. CIV-2014-1439-C |
| | ) | |
| v. | ) | |
| | ) | |
| 1. STATE OF OKLAHOMA *ex rel* The OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES; | ) ) ) ) | JURY TRIAL DEMANDED |
| 2. THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES, | ) ) ) ) | |
| 3. TERRI WHITE, Commissioner and Chief Executive Officer of the Oklahoma Department Of Mental Health And Substance Abuse Services, | ) ) ) ) | |
| 4. DURAND CROSBY, Chief Operating Officer of the Oklahoma Department Of Mental Health And Substance Abuse Services; and | ) ) ) | |
| 5. CRATUS DEWAYNE MOORE, General Counsel of Oklahoma Department of Mental Health and Substance Abuse Service. | ) ) ) ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| | ) | |

# PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Kimberly Poff, files this First Amended Complaint against Defendants, the State of Oklahoma *ex rel* the Oklahoma Department of Mental Health and Substance Abuse Services; the Board of Directors for the Oklahoma Department of Mental Health and Substance Abuse Services; Terri White, Commissioner and Chief Executive of Oklahoma Department of Mental Health and Substance Abuse Services; Durand Crosby, Chief Operating Officer of the Oklahoma Department of Mental Health and Substance Abuse Services; and Cratus Dewayne Moore, General Counsel of Oklahoma Department of Mental Health and Substance Abuse Services and hereby alleges and states as follows:

## A. JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the subject matter of this dispute pursuant to 42 U.S.C. §1331, as this is an action to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States. Plaintiff seeks remedies under 42 U.S.C. §1983.  The Court also has jurisdiction over the lawsuit because the suit arises under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq., including incorporated provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 et seq.

2.     This Court has supplemental jurisdiction over the pendent state claims pursuant to 28 U.S.C. § 1367.

3.     The Defendants are located and/or doing business within this judicial district and division. This action is brought within the judicial district in which the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## B. PARTIES

4.      Plaintiff Kimberly Poff ("Plaintiff" or "Kimberly Poff") is a citizen of Oklahoma and a resident of Oklahoma County.

5.      Defendant the Oklahoma Department of Mental Health and Substance Abuse Service ("Department" or "ODMHSAS") is an agency of the State of Oklahoma.

6.      Defendant the Oklahoma Department of Mental Health and Substance Abuse Service is charged with the responsibility of regulating providers of services to the mentally ill, or those suffering from drug and alcohol abuse. 43A O.S. §2-101, *et seq.*

7.      Defendant, the Board of Mental Health and Substance Abuse Services, is the governing board for ODMHSAS. 43A O.S. §2-101(A)(2).

8.      The Chief Executive Officer of the ODMHSAS shall be the Commissioner of Mental Health and Substance Abuse Services. 43A O.S. §2-101(A)(2).

9.      The ODMHSAS is charged with investigating any claims of an individual being wrongfully deprived of liberty, or is cruelly, negligently or improperly treated, or inadequate provision is made for the individual's appropriate medical care, proper supervision and safe keeping if the individual is receiving treatment in a facility operated by, certified by, or under contract with the Department. 43A O.S. §2-108(A)(2).

10.     Defendant Terri White is a citizen of Oklahoma and the Commissioner and Chief Executive Officer for the Department of Mental Health and Substance Abuse Services and is sued in her individual capacity.

11.     Defendant Durand Crosby is a citizen of Oklahoma and the Chief Operating Officer for the Department of Mental Health and Substance Abuse Services and is sued in his individual capacity.

12.     Defendant Cratus Dewayne Moore, a/k/a Dewayne Moore, is a citizen of Oklahoma and General Counsel for the Department of Mental Health and Substance Abuse Services and is sued in his individual capacity.

### C.  CONDITIONS PRECEDENT

13.     All conditions precedent have been performed or have occurred.

14.     On or about August 23, 2013, Kimberly Poff was terminated from her job as Inspector General with the Department of Mental Health and Substance Abuse Services.

15.     On or about January 24, 2014, the Plaintiff timely submitted an Intake Questionnaire and filed a Charge of Discrimination against the Defendant through the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit 1, *Intake Questionnaire and Charge of Discrimination*.

16.     On or about May 7, 2014, the EEOC issued the Plaintiff her Notice of Right to Sue. *See* Exhibit 2, *Right to Sue Letter*.

17.     On or about June 6, 2014, the Plaintiff delivered a Notice of Tort Claim to the Office of the Risk Management Administrator beginning the Tort Claim process pursuant to 51 O.S. §151 et seq. *See* Exhibit 3, *Tort Claim*.

18.     On or about July 29, 2014, the Office of the Risk Management Administrator issued a letter denying the tort claim. *See* Exhibit 4, *Denial of Tort Claim Letter*.

## D. FACTUAL ALLEGATIONS

19.     At the time of her termination Kimberly Poff had been a State employee for 22 years and an employee for the ODMHSAS for five years and eight months.

20.     Prior to working for ODMHSAS, Kimberly Poff worked as a Social Services Investigator for DHS for 15 years, where she investigated claims of fraud and employee misconduct.  During her work at DHS, Kimberly Poff received positive reviews, raises, and promotions.

21.     Kimberly Poff began employment with ODMHSAS as the Inspector General in 2007.

22.     While employed with ODMHSAS, Kimberly Poff received two raises, five commendations for her performance, and an employee of the month award.

23.     Prior to her termination, Kimberly Poff was never disciplined, demoted or otherwise questioned with regard to her competency, quality or professionalism in the performance of her job.

24.     Kimberly Poff's duties as Inspector General were to investigate misconduct, not only within state-operated facilities, but also within management and staff of ODMHSAS.

25.     Kimberly Poff also supervised two investigators, Michael DeLong and Jason Maddox.

26.     Michael DeLong was suspended and terminated at the same time as Kimberly Poff.

27.     Jason Maddox remained employed as an investigator and was eventually appointed to the Inspector General after Kimberly Poff was terminated.

28.     The reason provided for Kimberly Poff's termination was that she allegedly breached confidentiality on investigations.

29.     No reasons were given by ODMHSAS for the termination of Michael DeLong. However, on information and belief ODMHSAS now alleges that Michael DeLong attempted to intimidate a witness.

30.     Michael DeLong adamantly denies any claim that he behaved in such a manner.

31.     Kimberly Poff also has no reason to believe that Michael DeLong acted in any way to intimidate a witness.

32.     Kimberly Poff believes that Michael DeLong was terminated because he supported her with regard to certain actions taken by the Leadership within ODMHSAS including the decision to suppress an official report detrimental to the Department.

33.     Terri White, Dewayne Moore, and Durand Crosby (hereinafter "Leadership") were viewed by the employees within the Inspector General's Office as the "Leadership" of the Department and were often colloquially referred to either jointly or individually, as Leadership.

34.     During the course of her employment with ODMHSAS, Kimberly Poff was involved with the investigation of several high profile matters within the Department. Specifically, Kimberly Poff responded to complaints of sexual harassment made by employees at the ODMHSAS against high profile employees within the Department and

related to the NARCONON Arrowhead facility wherein three Oklahomans died while undergoing drug treatment.[1]

35.     On information and belief, Defendant Durand Crosby and Defendant Dewayne Moore have a personal friendship and relationship that preceded their employment with ODMHSAS, and that relationship clouds their judgment with respect to the conduct of the other and created an environment where any misconduct of one of them was overlooked by the other.

36.     During Kimberly Poff's employment with the Department, employees made allegations of sexual misconduct against General Counsel Dewayne Moore regarding an alleged affair between Mr. Moore and a member of his staff who Mr. Moore directly supervised.

37.     A third party sexual harassment claim was made to Michael DeLong regarding alleged preferential treatment shown to the direct report of Mr. Moore. The complaint alleged that there was a quid pro quo sexual harassment environment created by the conduct and the resulting promotion of the employee involved in the affair and a hostile work environment. Michael DeLong reported the claim to Kimberly Poff.

38.     On information and belief, Mr. Moore received favorable treatment with regard to claims of direct and third party sexual harassment made against him. This treatment

---

[1]     Three patients at NARCONON died while at the facility. The families of Gabriel Graves (CJ-2012-295), Hillary Holten (CJ-2012-224), and Stacy Murphy (CJ-2012-265) have all filed suit against NARCONON of Oklahoma Inc., and Oklahoma Corporation, d/b/a NARCONON Arrowhead; Narconon International, a Foreign Corporation; Association For Better Living And Education International, a Foreign Corporation; and Gerald Wootan, DO, M.Ed in the District Court of Pittsburg County for the wrongful death of these individuals.

would not have been afforded to other employees but for Mr. Moore's longstanding friendship with Mr. Crosby. As a result there was no full independent investigation into the allegations of misconduct surrounding his sexual relationship with an employee who reported directly to him.

39.     Kimberly Poff, as an Inspector General with ODMHSAS, has legitimate knowledge of complaints against NARCONON Arrowhead, a drug treatment facility owned and operated by a division of the Church of Scientology, which operates in the McAlester area and is licensed by the State of Oklahoma ODMHSAS.

40.     Kimberly Poff & Michael DeLong were tasked with investigating complaints arising out of the death of three individuals who were in the drug treatment at the Oklahoma NARCONON Facility.

41.     As a result of their investigation, Kimberly Poff and Michael DeLong determined that the NARCONON facility violated numerous state laws and recommended that the facility be shut down by ODMHSAS.

42.     Kimberly Poff's report to Leadership was finalized in the summer/fall of 2012. Despite the finalization of this report, Leadership at ODMHSAS including Terri White, Dewayne Moore, and/or Durand Crosby attempted to hide the findings by telling Kimberly Poff to advise the Board of Directors for ODMHSAS that a report and investigation were still pending.

43.     On information and belief, Leadership at ODMHSAS including Terri White, Dewayne Moore, and Durand Crosby buried and/or suppressed the findings of Kimberly

Poff and Michael DeLong because the Department did not want to get involved with litigation involving the Church of Scientology.

44.    Kimberly Poff was very vocal in 2012 and 2013 about her objection to ODMHSAS's decision to bury the official report on the NARCONON facility and Kimberly Poff believes her objection to the decision to bury the findings of the NARCONON investigation directly relate to her termination by the Department.

45.    No reason for given for Michael DeLong's termination.  In a letter received from the attorney for ODMHSAS, the Department claimed that Michael DeLong attempted to intimidate a witness.

46.    The alleged act of intimidation arose out of Michael DeLong standing in the back of the room at a training seminar where the "witness," who was an employee of ODMHSAS, was putting on a training class.

47.    The "witness" in question was on suspension from ODMHSAS because another employee had had accused him of sexual harassment.

48.    On information and belief, the "witness" was the only employee of ODMHSAS during the tenure of Kimberly Poff or Michael DeLong to be allowed to work or to teach such a seminar while also on suspension for suspected illegal conduct.

49.    The investigation into the sexual harassment involving the suspended employee "witness" was allegedly being conducted by an outside party because of a long standing friendship between Kimberly Poff and the employee victim of sexual harassment.

50.    Kimberly Poff asked for an independent investigation to insure that her friendship did not act to bias the outcome of the investigation.

51. Therefore, neither Kimberly Poff nor her employees, including Michael DeLong, were investigators on this case.

52. On information and belief, the firing of Michael DeLong was directly related to the firing of Kimberly Poff.

53. Michael DeLong has also filed a petition against all named Defendants as well as a first amended complaint for retaliation, violation of First Amendment rights, conspiracy, negligent training and supervision, wrongful termination against public policy and any and all other causes of action which are relevant under the circumstances.

54. Kimberly Poff and Michael DeLong adamantly deny any claim that Michael DeLong attempted to intimidate a witness and claim that the ODMHSAS fired him in an attempt to cover up an ongoing pattern of wrongful conduct occurring within the Department by suppressing official reports of wrongdoing.

**COUNT ONE: 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION CLAIM AGAINST TERRI WHITE, DURAND CROSBY AND CRATUS DEWAYNE MOORE IN THEIR INDIVIDUAL CAPACITIES**

55. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 - 54 as if fully set forth herein.

56. On August 23, 2013, Kimberly Poff was an at-will public employee employed by the Oklahoma Department of Mental Health and Substance Abuse Service.

57. In the summer/fall of 2012, Kimberly Poff finalized an official report pursuant to her findings subsequent to an investigation of alleged wrongdoing at NARCONON, an Oklahoma alcohol and drug treatment facility licensed by the Department. In her official report, Kimberly Poff determined that NARCONON violated numerous state laws. In

discussions related to NARCONON, Kimberly Poff recommended that the entity be shut down.

58.     Despite the receipt of Kimberly Poff's report and verbal recommendations, that at times directly contradicted Leadership's desired outcomes, Leadership at ODMHSAS, including Terri White, Dwayne Moore and Durand Crosby, repeatedly advised the Board of Directors for ODMHSAS that the investigation was still pending

59.     Defendant Crosby made numerous suggestions to Kimberly Poff about altering her original findings to suit the Leadership's preferences.

60.     Kimberly Poff was directed to tell the Board that her investigation was still pending in order to delay or suppress the publication of the report because the leadership at ODMHSAS was afraid to take on NARCONON in litigation because of the significant financial backing of the facility by the church of Scientology.

61.     Kimberly Poff engaged in protected speech when, in 2012 and 2013, she was very vocal regarding her objection to the position of ODMHSAS to bury the final investigative report on NARCONON, an act she reasonably believed was an abuse of authority and that presented a substantial and specific danger to public health or safety.

62.      At the time of Plaintiff's protected speech, Kimberly Poff was acting as a private citizen as to matter of public concern related to the suppression of an official report because, without publication of this report, citizens of Oklahoma would be deprived of informed opinions on important public issues.

63.     Kimberly Poff's protected speech did not interfere with the efficient or effective operation of the Board or the Department.

11

64. Kimberly Poff was terminated from employment as a direct and proximate result of her protected speech.

65. As a result of the violation of her First Amendment rights, Kimberly Poff has lost all of the benefits and privileges of his employment and suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering and is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. §1983.

**COUNT TWO:  AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) (AS TO THE DEPARTMENT AND THE BOARD)**

66. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 – 65 as if fully set forth herein.

67. Plaintiff is an employee within the meaning of the ADEA and belongs to the class of employees protected under the statute, namely, employees over the age of 40. *See* 29 U.S.C. §§630(f), 631(a).

68. Kimberly Poff was 44 years of age at the time of the discriminatory acts alleged.

69. Defendant is an employer within the meaning of the ADEA. *See* 29 U.S.C. §630(b).

70. Defendant intentionally discriminated against Plaintiff because of her age in violation of the ADEA.

71. Kimberly Poff was not given an opportunity to apply for or participate in a Master's Degree Program created by and paid for by the Department in order to further development within the department.

72.    When Kimberly Poff asked HR Director Ellen Buettner why she was excluded, Ms. Buettner stated that "she knew that Ms. Poff was eligible to retire in six years, and leadership did not even consider her because they 'just thought' she wasn't interested."

73.    Counsel for ODMHSAS later falsely alleged that Kimberly Poff could move no higher in her employment with the department.

74.    In fact, if Kimberly Poff had been given the opportunity to participate in the Master's Degree Program, she would have had the opportunity to obtain a Master's Degree in Public Health, Master of Arts or Master's Degree in Business Administration, Social Science or a related field.  The advanced degree, in conjunction with her years of supervisory experience as the Inspector General, would have qualified her to serve as the Commissioner of the ODMHSAS.  43A O.S. §2-201.

75.    An advanced degree may have also made Kimberly Poff eligible for positions such as Director of Human Relations, Chief Operating Officer and/or other high ranking positions within the Department.

76.    Oklahoma law allows ODMHSAS to pay for further education for its employees. However, there is no requirement that the advanced education move the employee into a higher ranking position in order to be eligible to receive the additional education or training.  Participation in the program required only that the employee enter into a contract to work for the Department for an equivalent period of time or reimburse the cost of the training to the Department.  43A O.S. § 2-214.

77.     Kimberly Poff was denied the opportunity to participate in the advanced education program when similarly situated younger employees were allowed to participate in the program.

78.     This discrimination is in clear violation of 29 U.S.C.A. § 621 *et. seq.* and 29 U.S.C.A. 623(a)(2) *et. seq.* which state that employers cannot discriminate against persons covered by the Act in hiring, firing, or any terms, conditions, or privileges of employment; nor can they limit, segregate, or classify employees on the basis of age. It is discrimination for an employer to put their employees in a classification which would cause deprivation of individual employment opportunities due to the individual's age.

79.     As a result of the age discrimination and the other wrongful acts of the Defendants, Kimberly Poff has suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

**COUNT THREE - GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED) (AS TO THE DEPARTMENT AND THE BOARD)**

80.     Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 – 79 as if fully set forth herein.

81.     During the course of Plaintiff's employment with the Oklahoma Department of Mental Health and Substance Abuse Service, Defendants discriminated against the Plaintiff in the terms, conditions, and privileges of employment in various ways in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

82.    This Act is designed to regulate employment practices by making it unlawful to discriminate based on sex in hiring, firing, wages, terms, conditions, or privileges of employment.

83.    Plaintiff's gender, female, was a significant factor in Defendant's adverse employment decisions related to Plaintiff and in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §2000e et seq.

84.    Plaintiff has exhausted her administrative remedies under Title VII.

85.    Kimberly Poff was treated differently than four other male employees facing similar investigations and suspensions.  These four male employees had multiple allegations against them of severe misconduct that included falsification of documents, fraud, hostile, offensive, and intimidating work environment, sexual harassment, consumer abuse, racial and sexual discrimination and other inappropriate conduct. Yet, none of these employees were treated as harshly as Ms. Poff has been treated.

86.    As a result of this gender discrimination and the other wrongful acts of the Defendants, Ms. Poff has suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

**COUNT FOUR:  42 U.S.C. § 1983 VIOLATION OF CONSTITUTIONAL RIGHTS (AS TO TERRI WHITE, DURAND CROSBY AND CRATUS DEWAYNE MOORE  IN THEIR INDIVIDUAL CAPACITIES)**

*Kimberly Poff Engaged in Speech Protected by the First Amendment of the United States Constitution*

87.     Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 - 86 as if fully set forth herein.

88.     On August 23, 2013, Kimberly Poff was a public employee employed by the Oklahoma Department of Mental Health and Substance Abuse Service.

89.     Plaintiff Kimberly Poff exercised her right to freedom of speech when she protested the suppression of an official report within the office of ODMHSAS that had state-wide ramification.

90.     Kimberly Poff made statements on matters of public concern.  Plaintiff signed off on an official report that uncovered inappropriate and potentially illegal conduct occurring at the NARCONON facility.  Some or all of the Individual Defendants tried to delay, change and/or suppress the report entirely.  Kimberly Poff exercised her right to free speech when she protested and resisted attempts to alter or bury the report entirely.

91.     At the time of Plaintiff's protected speech, Kimberly Poff was acting as a private citizen on a matter of public concern related to the suppression of a finalized official report from her office that exposed potential wrongdoing at the NARCONON facility and led to Plaintiff's recommendation to close the facility.

92.     Without publication of this report, citizens of Oklahoma are and will be deprived of critical information regarding a state-licensed rehabilitation center detrimental to the health and safety of Oklahoma citizens.

93.     The Individual Defendants are subject to suit under section 1983 because each has acted under color of law to deprive Plaintiff of rights secured by federal law or the Constitution.

94.     Kimberly Poff's speech went beyond her duties as Inspector General in the Department.  Plaintiff spoke out as a citizen in order to raise awareness that matters related to public safety and public health, as expressed in her official report on the NARCONON investigation, were being concealed.

95.     Kimberly Poff's speech did not interfere with the efficient or effective operation of the Board or the Department.

96.     Kimberly Poff was terminated from employment as a direct and proximate result of her protected speech.

97.     As a result of the violation of her First Amendment rights, Kimberly DeLong has lost all of the benefits and privileges of her employment and suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering and is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. §1983.

**COUNT THREE:  NEGLIGENT TRAINING, SUPERVISION AND RETENTION (AS TO THE DEPARTMENT AND THE BOARD)**

98.     Plaintiff hereby adopts and realleges all allegations in paragraphs 1 - 97 as if fully set forth herein.

99.     The Department and the Board owed Plaintiff Kimberly Poff a duty of care in training, supervising and retaining employees in the Department of Mental Health and Substance Abuse Services.

100.    The ODMHSAS and the Board of Directors failed to train and supervise its Leadership employees, including Terri White, Durand Crosby and DeWayne Moore to

ensure that they knew, understood and enforced the law with regard to the reviewing, disciplining and terminating employees for alleged misconduct.

100.    The Department and the Board knew that the Leadership employees had a tendency to show preferential treatment to high ranking employees or personal friends to the detriment of other employees in the Department, including Plaintiff Kimberly Poff, especially in matters of professional review and discipline.

101.    The Department and the Board either knew that the Leadership employees had a reputation or record that showed his/her propensity to misuse the kind of authority given to them, or, had they exercised due diligence, this information would have been readily available.

102.    As a result of the negligence in hiring, training and retaining of Leadership employees, Kimberly Poff has lost all of the benefits and privileges of her employment and suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

**COUNT FOUR:    TORT CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY (AS TO THE DEPARTMENT AND THE BOARD)**

103.    Plaintiff adopts and re-alleges all allegations in paragraphs 1 – 102 as if fully set forth herein.

104.    At all material times, Kimberly Poff was an at-will employee in the Department of Mental Health and Substance Abuse Services was her public employer.

105.    The actions of Defendants in this matter violate Oklahoma constitutional, statutory decisional Law as well as Oklahoma public policy.

106.    The remedies available to Plaintiff under Federal law are not adequate to address the injuries and damages Kimberly Poff suffered as a result of Defendants' illegal and wrongful conduct.

107.    During her tenure with the Department, Kimberly Poff was involved in activities that uncovered serious and ongoing violations of the public policy of the state of Oklahoma involving health and safety.  Kimberly Poff exercised her right to freely speak on these public policy violations as specifically set out below:

*Kimberly Poff's Speech Expressed Opposition to Sexual Harassment in the Workplace.*

108.    Kimberly Poff spoke out on issues related to sexual harassment in the department and urged that such claims be investigated.

109.    Oklahoma has a clearly articulated public policy which castigates sexual harassment in the workplace. *See* Oklahoma's Anti-Discrimination Act, 25 O.S.1991 § 1302.

110.    The remedies found in the Anti-Discrimination Act do not encompass the broad range of wrongful discharges that could be addressed in a *Burk* tort so that Plaintiff has no adequate remedy at law for the wrongful discharge claims asserted.

*Kimberly Poff's Speech Addressed Matters of Public Concern Related to the Program for the Control and Treatment of Alcoholism and Drug Abuse.*

111.    Kimberly Poff was discharged in significant part for a reason that violated an Oklahoma public policy goal.

112.   The public policy of the state of Oklahoma is to recognize alcoholism and drug abuse as illnesses and public health problems subject to medical treatment and other therapeutic intervention and abatement.  Okla. Stat. Ann. tit. 43A, § 3-402 (West).

113.   Kimberly Poff's discharge from employment resulted from her efforts to bring to light a report that revealed potential wrongdoing in the state-licensed NARCONON drug treatment facility that involved the death of three Oklahoma citizens while patients of the facility.

### Kimberly Poff exercised her right to speak freely under the Oklahoma Constitution

114.   Kimberly Poff was discharged from her employment from the Oklahoma Department of Mental Health and Substance Abuse Services for freely expressing her sentiments regarding Defendants' refusal to publish an official report of wrongdoing at an Oklahoma-licensed alcohol and drug treatment facility.

115.   Plaintiff's discharge is in violation of Art. 2 § 22 of the Oklahoma Constitution that provides:

> Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions for libel, the truth of the matter alleged to be libelous may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous be true, and was written or published with good motives and for justifiable ends, the party shall be acquitted.

### Kimberly Poff was intentionally discriminated against because of her age in violation of Oklahoma public policy

116.   Defendant intentionally discriminated against Plaintiff because of her age in violation of Oklahoma public policy

117.    Kimberly Poff was not given an opportunity to apply for or participate in a Master's Degree Program created by and paid for by the Department in order to further development within the department.

118.    In fact, if Kimberly Poff had been given the opportunity to participate in the Master's Degree Program, she would have had the opportunity to obtain a Master's Degree in Public Health, Master of Arts or Master's Degree in Business Administration, Social Science or a related field.  The advanced degree, in conjunction with her years of supervisory experience as the Inspector General, would have qualified her to serve as the Commissioner of the ODMHSAS.  43A O.S. §2-201.

119.    An advanced degree may have also made Kimberly Poff eligible for positions such as Director of Human Relations, Chief Operating Officer and/or other high ranking positions within the Department.

120.    Oklahoma law allows ODMHSAS to pay for further education for its employees.  However, there is no requirement that the advanced education move the employee into a higher ranking position in order to be eligible to receive the additional education or training.  Participation in the program required only that the employee enter into a contract to work for the Department for an equivalent period of time or reimburse the cost of the training to the Department.  43A O.S. § 2-214.

121. Kimberly Poff was denied the opportunity to participate in the advanced education program when similarly situated younger employees were allowed to participate in the program.

122. As a result of action in Count Four, Kimberly Poff has lost all of the benefits and privileges of her employment and suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

## PRAYER

Plaintiff Kimberly Poff demands judgment in her favor and against the Defendants, State of Oklahoma *ex rel* the Oklahoma Department of Mental Health and Substance Abuse Services; the Board of Directors for the Oklahoma Department of Mental Health and Substance Abuse Services; Terri White, Commissioner and Chief Executive of Oklahoma Department of Mental Health and Substance Abuse Services, individually; Durand Crosby, Chief Operating Officer of the Oklahoma Department of Mental Health and Substance Abuse Services, individually; and Cratus Dewayne Moore, General Counsel of Oklahoma Department of Mental Health and Substance Abuse Services, individually, in an amount in excess of $75,000.00 for their wrongful, improper and illegal conduct. Plaintiff requests that she be awarded her lost wages, damages for lost benefits, damage to reputation, damages for emotional distress and mental suffering, and punitive damages. Plaintiff further requests that the Court award her the costs and

attorney's fees associated with this suit and any and all other relief that the Court deems just and equitable.

Rachel Bussett, OBA #19769
Bussett Law Firm, P.C.
3555 NW 58th St., Ste. 1010
Oklahoma City, OK 73112
405-605-8073
405-601-7765 fax
rachel@bussettlaw.com

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED