IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) KIMBERLY POFF,<br><br>       Plaintiff,<br><br>v.<br><br>(1) STATE OF OKLAHOMA *ex rel* THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES;<br>(2) THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES;<br>(3) TERRI WHITE, Commissioner and Chief Executive Officer of the Oklahoma Department of Mental Health and Substance Abuse Services;<br>(4) DURAND CROSBY, Chief Operating Officer of the Oklahoma Department of Mental Health and Substance Abuse Services; and<br>(5) CRATUS DEWAYNE MOORE, General Counsel of Oklahoma Department of Mental Health and Substance Abuse Services,<br><br>       Defendants. | Case No. CIV-14-1438-C |

## EMPLOYEE DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

   Defendants Terri White, Durand Crosby, and Cratus Dewayne Moore, in their individual and representative capacities (the "Employee Defendants"), respectfully move the Court for an order dismissing the Plaintiff's claims against them.

   The gravamen of the First Amended Complaint contends the Plaintiff was terminated and/or discriminated against by her employer, the Oklahoma Department of Mental Health and Substance Abuse Services (the "Department"), and that such

termination / discrimination was based on several wrongful factors – her age, her gender, her knowledge of investigations into Department officials, and her alleged conduct in vocalizing disagreement with her supervisors over an alleged decision to "bury an investigation report" concerning a Scientology-based drug treatment center.[1]

The Plaintiff's original petition (Doc. No. 1-1) (removed from state court) asserted nine separate counts against the Employee Defendants, on the exact same causes of action asserted against the Department.  For various reasons (which were set forth in a previously-filed motion to dismiss the original petition [Doc. No. 17]), these original nine claims all failed as a matter of law against the Employee Defendants.

In an attempt to remedy the defects in his original pleading, the Plaintiff filed an Amended Complaint dropping eight of the original nine causes of action against the Employee Defendants.  The only live claim remaining against the Employee Defendants is a Section 1983 Claim, predicated on an alleged exercise of First Amendment rights.

Despite having the benefit of reviewing the revising the original petition (with full knowledge of the legal arguments raised in the previously filed motion to dismiss), the Plaintiff's remaining claims against the Employee Defendants still fail to state an

---

[1] ODMHSAS was established in 1953 by the Oklahoma Mental Health Law.  Since that time, the Department has provided services, assistance, and resources to hundreds of thousands of Oklahomans affected by mental illness and substance abuse.  While the Plaintiff's First Amended Complaint is replete with errors and factual untruths that sully the Department's reputation, the Defendants are mindful of the procedural standard applicable to this motion, and understand that the opportunity to rebut and disprove each of the Plaintiff's allegations will arise at a later date in this litigation.  To the extent that any of the Plaintiff's claims survive the pleading stage, the Defendants look forward to the opportunity to respond factually to the Plaintiff's remaining allegations.

actionable theory against the Employee Defendants because the Plaintiff did not engage in protected speech. Further, the Employee Defendants are entitled to qualified immunity on the Plaintiff's claim against them. Accordingly, the Employee Defendants should be dismissed from this case entirely.

I.  **THE PLAINTIFF'S SECTION 1983 CLAIMS FAIL AS A MATTER OF LAW AS AGAINST THE EMPLOYEE DEFENDANTS.**

As noted above, the only remaining claim against the Employee Defendants is a Section 1983 Claim, in which the Plaintiff claims her First Amendment guarantee of free speech was infringed.[2] Specifically, the Plaintiff contends she was terminated after becoming "very vocal" over the Department's alleged decision to "bury" an investigation report regarding a Scientology-based drug treatment program.

As shown below, the Plaintiff never engaged in any speech that exceeded the parameters of her job description, nor did she vocalize any displeasure beyond the confines of the Department. Simply put, the Plaintiff did not engage in the type of speech that is protected by the First Amendment. At a minimum, the Plaintiff has failed to establish that her speech was so clearly protected that she has met her burden to overcome the Employee Defendants' qualified immunity.

---

[2] The Plaintiff's Section 1983 Claim against the Employee Defendants appears first in "Count I" of her Amended Petition (Paragraphs 55 – 65). For reasons that are not entirely clear to the Employee Defendants, the Plaintiff repeats similar allegations in "Count IV" (Paragraphs 87 -97).

A.     **The Plaintiff did not engage in protected speech.**

As previously stated, the Plaintiff's First Amendment claim is apparently based on the contention that she engaged in and was subsequently punished for protected speech on a matter of public concern.[3] The speech in question is the Plaintiff's allegation that she "was very vocal" about the Department's decision to "bury" a report that the Plaintiff prepared pursuant to her job duties as Inspector General. As shown below, even if believed, this does not give rise to a viable First Amendment claim.

The Supreme Court has long recognized that "the government's interest in regulating the speech of its employees differs significantly from its interest in regulating the speech of the public in general." *Deschenie v. Bd. of Educ.*, 473 F.3d 1271, 1276 (10th Cir. 2007). When a citizen accepts public employment, "'the citizen by necessity must accept certain limitations on his or her freedom.'" *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)).

When faced with a First Amendment claim by a public employee, "courts must balance the First Amendment interests of that employee, speaking as a concerned citizen,

---

[3] Although the First Amended Complaint identifies several topics about which the Plaintiff claims to have had "knowledge" (including alleged sexual misconduct), the only instance where the Plaintiff claims to have transformed her alleged knowledge into actual speech is when she claims to have become "very vocal" about the Department's supposed decision to not make public certain investigatory findings about a Scientology-based treatment center. While the Employee Defendants deny "burying" the report in question, even assuming the Plaintiff's allegation for the procedural purposes of this Motion, the Plaintiff has not pled (or offered any authority) for the proposition that either the Department or the Employee Defendants were obligated to make such information public.

4

with the government's interests in promoting the efficiency of the public services it performs through its employees." *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). To conduct this balancing, courts utilize a five-part test based on the Supreme Court cases of *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See Brammer–Hoelter*, 492 F.3d at 1202–03.

> The *Garcetti/Pickering* analysis requires the following steps:
>
>> First, the court must determine whether the employee speaks pursuant to [her] official duties. If the employee speaks pursuant to [her] official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to [her] official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that [her] speech was a substantial factor or a motivating factor in [a] detrimental employment decision. Finally, if the employee establishes that [her] speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Id.* (internal citations and quotations omitted).

"The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Id.* at 1203.

Here, the speech in question cannot move past the first element of the *Garcetti/Pickering* analysis because the Plaintiff, by her own admission, was speaking

5

pursuant to her job duties as Inspector General for the Department.  *See* (First Amended Complaint, Doc. No. 21, at ¶24).

In analyzing the first factor of the *Garcetti/Pickering* rubric, "[t]he Tenth Circuit takes 'a broad view of the meaning of speech that is pursuant to an employee's official duties.'" *Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 986 F.Supp.2d 1249, 1255 (W.D. Okla. 2013). There is no "formula for determining when a government employee speaks pursuant to [her] official duties," and courts have resisted setting bright-line rules. *Brammer–Hoelter*, 492 F.3d at 1203. Instead, courts take a case-by-case approach, "looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Duckett,* 986 F.Supp.2d at 1255.

Despite the absence of bright line rules, the body of Tenth Circuit case law on this issue has developed to the point of establishing the following general guidelines:

First, courts focus on whether the speech "stemmed from and [was of] the type ... that [the employee] was paid to do." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010); *see also Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 798 (10th Cir. 2007). According to the Complaint: "Ms. Poff's duties as Inspector General were to investigate misconduct, not only within State Operated facilities, but also within management and staff of ODMHSAS." (First Amended Complaint, Doc. No. 21, ¶24).

A second consideration is whether the report was within or outside the employee's "chain of command." *See Rohrbough*, 596 F.3d at 747. Although the Complaint is vague on this point, it appears that the Plaintiff's only alleged complaints were directed to

the Employee Defendants.  At the very least, the Complaint identifies no one outside of the Employee Defendants to whom she made the allegedly protected comments.

Third, the Tenth Circuit has noted, as a general matter, that "speech relating to internal personnel disputes is not regarded as a matter of public concern."  *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994) (citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)).  This would seem to hold particularly true here, where the speaker's job duties include the investigation of alleged misconduct within the employer's management and staff.

Based on the guidelines established by Tenth Circuit case law, the speech for which the Plaintiff claims to have been terminated (*i.e.* alleged complaints about "burying a report") does not satisfy the first factor of the *Garcetti/Pickering* analysis.

The Tenth Circuit's opinion in *Salazar v. City of Commerce City*, 535 F.Appx. 692, 699 (10th Cir. 2013) is instructive.  In *Salazar*, the plaintiff alleged she was terminated from her position as Director of Economic Development because she spoke out "regarding discrimination against herself and others."  *Id.*  The trial court ruled that the plaintiff's complaints of discrimination failed to support a First Amendment claim because her complaints were "related to her position or to her own job performance."  *Id.* at 700.  In affirming the judgment of the trial court, the Tenth Circuit explained that the First Amendment does not protect a public employee's speech if the speech "reasonably contributes to or facilitates the employee's performance of [an] official duty."  *Id.* at 701 (quoting *Brammer-Hoelter,* 492 F.3d at 1203).  Because the plaintiff's communications

7

were made pursuant to her "official duties," she was not speaking as a "citizen" for First Amendment purposes. *Id*.

Likewise, in a similar factual context, an Inspector General for the City of Mount Vernon, New York brought a § 1983 claim, alleging the City violated his free-speech rights when it fired him for reporting improper actions within certain City programs. *Stokes v. City of Mount Vernon, N.Y.* 2012 WL 3536461 (S.D.N.Y. 2012). The court dismissed the claim, finding that, as Inspector General, reporting wrongdoing was his official duty:

> **Here, there is no question plaintiff was not acting as a citizen when performing his duties as Inspector General. According to the City Charter, the Inspector General is empowered to investigate allegations of corruption, fraud, criminal activity, or abuse by any Mount Vernon official or employee and make public written reports of the investigations.** Plaintiff's [reports] were all issued pursuant to plaintiff's investigation . . ., which he conducted in his capacity as Inspector General. Therefore, "when he went to work and performed the tasks he was paid to perform, plaintiff acted as a government employee." *Garcetti v. Ceballos,* 547 U.S. at 422.

*Stokes*, 2012 WL 3536461, at *5 (emphasis added) (internal alterations omitted).

Plaintiff's allegations clearly set forth that any speech she allegedly made regarding the reports occurred in the performance of her official duties. (Amended Complaint, Doc. No. 21, at ¶ 2. Therefore, the alleged speech (even if it did occur) would not be protected by the First Amendment. As such, the Plaintiff's claims against the Employee Defendants should be dismissed.

B. **The Employee Defendants are entitled to qualified immunity on the Plaintiff's Section 1983 claims against them.**

The Employee Defendants are entitled to qualified immunity on the Plaintiff's Section 1983 claims because the Plaintiff has failed to plead violations of any clearly established constitutional rights of which a reasonable person would have known.

The qualified immunity defense is available to government actors sued in their official capacities. *Langley v. Adams County, Colorado*, 987 F.2d 1473, 1477 (10th Cir. 1993). Under the qualified immunity doctrine, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hicks v. City of Watonga*, 942 F.2d 737, 749 (10th Cir. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Accordingly, "[q]ualified immunity protects public officials from individual liability in a § 1983 action ***unless the officials violated 'clearly established . . . constitutional rights of which a reasonable person would have known***.'" *Workman*, 32 F.3d at 478-79 (citing *Harlow*, 457 U.S. at 818).

"Once a defendant to a § 1983 action raises a qualified immunity defense, the burden shifts to the plaintiff to show both facts and law to establish that the defendant is not entitled to a qualified immunity." *Workman*, 32 F.3d at 479 (citing *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir.1991)).

In order to satisfy her burden, "[t]he plaintiff must 'come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law

9

and that that law was clearly established when the alleged violation occurred.'" *Workman*, 32 F.3d at 479 (10th Cir. 1994) (citing *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988)).

Because qualified immunity is more than a defense to liability, and is instead an immunity from suit that is lost if the case is erroneously permitted to go to trial, the issue of whether qualified immunity exists "should be resolved at the earliest possible stage in litigation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)).

"To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated [her] constitutional rights, ***which were clearly established at the time of violation***." *Schwartz*, 702 F.3d at 579 (emphasis added). In order to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 588 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The predicate for the Plaintiff's Section 1983 claims is that the Employee Defendants allegedly violated the Plaintiff's First Amendment rights by terminating her employment after she became "very vocal" about the Department allegedly "burying" an investigative report concerning a Scientology-based treatment center. As noted above, it was the Plaintiff's job to not only create such reports, but also to investigate alleged impropriety within the management and staff of ODMHSAS.

Even construing the facts in the Plaintiff's favor, the allegations of the First Amended Complaint fall short of establishing that a reasonable official would know that terminating the Plaintiff *for speech made within the chain-of-command about her job-related responsibilities* would violate the Plaintiff's freedom of speech under the First Amendment. Accordingly, the Plaintiff has failed to plead facts sufficient to overcome the Employee Defendants' qualified immunity.

## CONCLUSION

The Plaintiff has no viable Section 1983 claim against the Employee Defendants for violating her First Amendment rights because the speech identified by the Plaintiff was made in the course of her job duties and within her chain of command. Since this is the only remaining claim against the Employee Defendants, they should each be dismissed from this case entirely.

Respectfully submitted,

/s Jeremy Tubb_____
Jeremy Tubb, OBA # 16739
Matthew S. Panach, OBA #22262
FULLER, TUBB, BICKFORD & KRAHL, PLLC
201 Robert S. Kerr, Suite 1000
Oklahoma City, OK 73102
Telephone: (405) 235-2575
Fax: (405) 232-8384
jeremy.tubb@fullertubb.com
panach@fullertubb.com
*Attorneys for Defendants Terri White, Durand Crosby, and Cratus Dewayne Moore*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of March, 2015, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing.  The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Rachel L. Bussett, OBA #19769
Bussett Law Firm, PC
3555 NW 58th St., Suite 1010
Oklahoma City, OK 73112
rachel@bussettlaw.com
*Attorneys for the Plaintiff*

Victor F. Albert, OBA#12069
CONNER & WINTERS, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102
valbert@cwlaw.com
*Attorney for Defendants State of Oklahoma ex rel The Oklahoma Department of Mental Health and Substance Abuse Services and The Board of Directors for The Oklahoma Department of Mental Health and Substance Abuse Services*

/s Jeremy Tubb_____
Jeremy Tubb