# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

Case No. 5:14-cv-01438-C

(1) KIMBERLY POFF,

Plaintiff,

v.

(1) STATE OF OKLAHOMA ex rel THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES;
(2) THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES;
(3) TERRY WHITE, Commissioner and Chief Executive Officer of the Oklahoma Department of Mental Health And Substance Abuse Services;
(4) DURAND CROSBY, Chief Operating Officer of the Oklahoma Department of Mental Health And Substance Abuse Services; and
(5) CRATUS DEWAYNE MOORE, General Counsel of Oklahoma Department of Mental Health And Substance Abuse Services,

Defendants.

## THE DEPARTMENT AND BOARD'S MOTION TO
## DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

VICTOR F. ALBERT, OBA #12069
ADAM P. MONTESSI, OBA #31157
CONNER & WINTERS, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK  73102
Telephone:  (405) 272-5711
Facsimile:  (405) 232-2695
Email:  valbert@cwlaw.com
Email:  amontessi@cwlaw.com

***Attorneys for Defendants, the State of Oklahoma ex rel. the Oklahoma Department of Mental Health and Substance Abuse Services and the Board of Directors for the Oklahoma Department of Mental Health and Substance Abuse Services***

**March 11, 2015**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 2

PROCEDURAL POSTURE ...................................................................................... 3

STANDARD OF REVIEW ........................................................................................ 3

ARGUMENTS AND AUTHORITIES ...................................................................... 4

I.  The Board should be dismissed because it is not a separate, suable entity
    and the claims against it are superfluous. .................................................... 4

    A.  The Board is not a separate, suable entity. ......................................... 4

    B.  The claims against the Board are duplicative. ..................................... 5

II. The "reporting wrongful activities" portions of Plaintiff's *Burk* claim are
    barred by *Shephard v. Compsource*. ........................................................... 6

    A.  Plaintiff's claims are covered by an existing statutory remedy—the
        Whistleblower Act. ............................................................................... 6

    B.  The Whistleblower Act adequately protects the public policy of
        protecting employees who report wrongful governmental activities. ........... 7

    C.  *Burk* claims premised on allegations of whistleblowing are barred
        even if the plaintiff relies upon sources of public policy other than
        the Act. .................................................................................................. 7

    D.  Because Plaintiff's allegations are covered by the Act, she cannot
        maintain a *Burk* claim. ....................................................................... 9

III. Plaintiff's negligence claim is both legally and factually deficient. ...................... 10

    A.  Plaintiff does not have a cognizable claim under Oklahoma law. .............. 11

    B.  The Department is immune under the Tort Claims Act. ............................ 12

    C.  Plaintiff's conclusory allegations fail to state a claim. ........................... 13

IV. Plaintiff's age-discrimination claims are legally barred. ...................................... 14

    A.  The Department is immune from liability under the ADEA. ..................... 15

    B.  The Oklahoma Legislature abolished *Burk* claims for age
        discrimination. ...................................................................................... 16

    C.  Leave to amend to assert a claim under the OADA would be futile. .......... 17

V.  Plaintiff fails to allege sufficient facts to support her sex discrimination
    claim. ...................................................................................................... 18

VI. Plaintiff's request for punitive damages should be dismissed. ............................ 22

CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Allen v. Justice Alma Wilson Seeworth Acad., Inc.*,
  2012 WL 1298588 (W.D. Okla. 2012) .................................................. 12

*Aramburu v. Boeing Co.*,
  112 F.3d 1398 (10th Cir. 1997) .......................................................... 20

*Asojo v. Oklahoma ex rel. Board of Regents of University of Oklahoma*,
  2012 WL 3679539 (W.D. Okla. 2012) .................................................. 13

*Barker v. State Ins. Fund*,
  40 P.3d 463 (Okla. 2001) ..................................................................... 10

*Baylis v. Oklahoma Dep't of Corr.*,
  2007 WL 4287612 (W.D. Okla. 2007) .................................................. 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................... 4, 24

*Benedix v. Indep. Sch. Dist. No. I-007 of Oklahoma Cnty., Okla.*,
  2009 WL 975145 (W.D. Okla. 2009) .............................................. 11, 12

*Burk v. K–Mart*,
  770 P.2d 24 (Okla.1989) ............................................................... passim

*City of Jenks v. Stone*,
  321 P.3d 179 (Okla. 2014) .................................................................. 11

*Diffenderfer v. Aeromet, Inc.*,
  852 P.2d 798 (Okla. Civ. App. 1993) .................................................. 11

*Ehireman v. Glanz*,
  2014 WL 5431202 (N.D. Okla. 2014) .................................................. 21

*Flarey v. Youngstown Osteopathic Hosp.*,
  783 N.E.2d 582 (Ohio App. 2002) ........................................................ 6

*Frank v. U.S. West, Inc.*,
  3 F.3d 1357 (10th Cir. 1993) ................................................................. 3

*Freeman v. State ex rel. Dep't of Human Servs.*,
  145 P.3d 1078 (Okla. 2006) ................................................................. 16

*Grizzle v. Oklahoma Dep't of Veterans Affairs*,
  2006 WL 3227880 (E.D. Okla. 2006) .................................................. 16

*Guttman v. Khalsa*,
  669 F.3d 1101 (10th Cir. 2012) .......................................................... 15

*Hanlen v. Henderson*,
  215 F.3d 1336 (10th Cir. 2000) .......................................................... 19

*Heno v. Sprint/United Mgmt. Co.*,
  208 F.3d 847 (10th Cir. 2000) ................................................................. 19

*Heslep v. Americans for African Adoption, Inc.*,
  890 F. Supp. 2d 671 (N.D. W. Va. 2012) ................................................. 5

*Houston v. Indep. Sch. Dist. No. 89 of Oklahoma Cnty.*,
  949 F. Supp. 2d 1104 (W.D. Okla. 2013) ........................................ 13, 14

*Igwe v. Saint Anthony's Hosp.*,
  804 F. Supp. 2d 1183 (W.D. Okla. 2011) ............................................... 18

*Kendrick v. Penske Transp. Servs., Inc.*,
  220 F.3d 1220 (10th Cir. 2000) ............................................................. 19

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ............................................................... 4

*Kimel v. Florida Board of Regents*,
  528 U.S. 62 (2000) ................................................................................ 15

*MacDonald v. Corporate Integris Health*,
  321 P.3d 980 (Okla. 2014) ..................................................................... 16

*Macon v. United Parcel Serv., Inc.*,
  743 F.3d 708 (10th Cir. 2014) ............................................................... 20

*Martin v. Weyerhaeuser Co.*,
  312 F. App'x 142 (10th Cir. 2009) ......................................................... 10

*McDonald v. Glanz*,
  2013 WL 3279805 (N.D. Okla. 2013) .................................................... 20

*McGowan v. City of Eufala*,
  472 F.3d 736 (10th Cir. 2006) ......................................................... 20, 21

*Medlock v. United Parcel Serv., Inc.*,
  608 F.3d 1185 (10th Cir. 2010) ............................................................. 16

*Mitchell v. City of Wichita*,
  140 F. App'x 767 (10th Cir. 2005) ......................................................... 18

*N.H. v. Presbyterian Church (U.S.A.)*,
  998 P.2d 592 (Okla. 1999) ............................................................... 11, 13

*Newby v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*,
  2011 WL 6883735 (W.D. Okla. 2011) ..................................................... 8

*Pai v. Nicholson*,
  2007 WL 1541328 (W.D. Okla. 2007) .................................................... 19

*Peters v. Black Tie Value Parking Serv., Inc.*,
  2013 WL 149773 (W.D. Okla. 2013) ...................................................... 16

ii

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) .................................................................... 14

*Pitts v. Elec. Power Sys., Inc.*, |
    2008 WL 2364998 (N.D. Okla. 2008) .......................................................... 10

*Polson v. Davis*,
    895 F.2d 705 (10th Cir. 1990) ...................................................................... 12

*Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty. Okla.*,
    954 F. Supp. 2d 1292 (N.D. Okla. 2012) ................................................... 4, 5

*Randall v. Gov't Employees Ins. Co.*,
    2010 WL 1438900 (W.D. Okla. 2010) ............................................................ 3

*Reed v. Dowling*,
    2015 WL 769854 (W.D. Okla. 2015) ........................................................... 15

*Riggs v. AirTran Airways, Inc.*,
    497 F.3d 1108 (10th Cir. 2007) .................................................................... 20

*Rivera v. City & Cnty. of Denver*,
    365 F.3d 912 (10th Cir. 2004) ...................................................................... 19

*Rouse v. Grand River Dam Auth.*,
    326 P.3d 1139 (Okla. 2014) ....................................................................... 7, 9

*Rubio v. Turner v. Unified Sch. Dist. No. 2012*,
    453 F. Supp. 2d 1295 (D. Kan 2006) ............................................................. 5

*Seminole Tribe of Florida v. Florida*,
    517 U.S. 44 (1996) ...................................................................................... 15

*Shephard v. Compsource*,
    209 P.3d 288 (Okla. 2009) ................................................................ 7, 8, 9, 10

*Stewart v. Oklahoma ex rel. Oklahoma Office of Juvenile Affairs*,
    2013 WL 6670291 (W.D. Okla. 2013) .......................................................... 11

*Trant v. Oklahoma*,
    426 F. App'x 653 (10th Cir. 2011) ...................................................... 4, 8, 15

*Vasek v. Bd. of Cnty. Comm'rs*,
    186 P.3d 928 (Okla. 2008) ............................................................................ 6

*Vice v. Conoco, Inc.*,
    150 F.3d 1286 (10th Cir. 1998) ............................................................. 11, 12

*Villescas v. Abraham*,
    311 F.3d 1253 (10th Cir. 2002) .................................................................... 22

*Webb v. Level 3 Commc'ns, LLC*,
    167 F. App'x 725 (10th Cir. 2006) ............................................................... 19

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - M2D_Amend_Cmplt_FINAL.docx

## Statutes

25 O.S. § 1350 ................................................................. 17, 22

25 O.S. §§ 1101 ...................................................................... 16

43A O.S. § 2-101 .................................................................. 5, 15

51 O.S. § 152 ........................................................................... 16

51 O.S. § 154 ........................................................................... 22

51 O.S. § 155 ..................................................................... 12, 13

74 O.S. § 840–2.5 ...................................................................... 6

## Rules

29 U.S.C. §§ 621 ...................................................................... 14

42 U.S.C. § 1981 ...................................................................... 22

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - M2D_Amend_Cmplt_FINAL.docx

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)   KIMBERLY POFF, | |
| Plaintiff, | |
| v. | Case No. 5:14-cv-01438-C |
| (1)   STATE OF OKLAHOMA *ex rel* THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES; | |
| (2)   THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES; | |
| (3)   TERRY WHITE, Commissioner and Chief Executive Officer of the Oklahoma Department of Mental Health And Substance Abuse Services; | |
| (4)   DURAND CROSBY, Chief Operating Officer of the Oklahoma Department of Mental Health And Substance Abuse Services; and | |
| (5)   CRATUS DEWAYNE MOORE, General Counsel of Oklahoma Department of Mental Health And Substance Abuse Services | |
| Defendants. | |

## THE DEPARTMENT AND BOARD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants, the State of Oklahoma *ex rel*. the Oklahoma Department of Mental Health and Substance Abuse Services (the "Department") and the Board of Directors for the Oklahoma Department of Mental Health and Substance Abuse Services (the "Board"), respectfully request this Court dismiss all claims asserted against them in Plaintiff Kimberly Poff's First Amended Complaint ("Amended Complaint").

1

## INTRODUCTION

In her Amended Complaint, Plaintiff asserts claims against the Department, the Board, and three individual Defendants. As an initial matter, the Board should be dismissed from this case because it is not a separate, suable entity.

The gravamen of Plaintiff's Amended Complaint is that she was discharged from her at-will employment as Inspector General of the Department for allegedly reporting her dissatisfaction with two departmental investigations: (1) an investigation into a consensual romantic relationship between two Department employees, and (2) an investigation into a Scientology-based drug treatment center.[1] Although these "reporting wrongful activities" claims are governed by the Oklahoma Whistleblower Act, Plaintiff attempts to circumvent the Act and the at-will employment doctrine by alleging claims for negligent discharge and discharge in violation of public policy. These claims are legally barred because, among other reasons, the Whistleblower Act is Plaintiff's exclusive avenue for relief.

Plaintiff also alleges age discrimination because she was not asked to participate in a master's degree program. Plaintiff attempts to assert her age-discrimination claim under the Age Discrimination in Employment Act ("ADEA") and as a *Burk* tort claim. These claims fail because the Department is immune from ADEA liability, and common-law remedies for age discrimination have been abolished in Oklahoma.

---

[1] Since 1953, the Department has provided services, assistance, and resources to hundreds of thousands of Oklahomans affected by mental illness and substance abuse. While Plaintiff's Amended Complaint is replete with untruths that sully its reputation, the Department is mindful that, due to the applicable standard of review, this Motion to Dismiss is not an appropriate vehicle for rebutting those untruths.

Plaintiff further claims she was discharged based on her gender in violation of Title VII, even though a male investigator was discharged the same day. Plaintiff does not state a claim of disparate treatment because she fails to allege facts showing that "similarly situated" males were treated more favorably.

Finally, Plaintiff requests punitive damages, which cannot be awarded against the Department. Her request for punitive damages should therefore be dismissed.

## PROCEDURAL POSTURE

Plaintiff filed this case in state court. After removing the case to this Court, Defendants moved to dismiss all claims asserted in Plaintiff's original Petition. Instead of responding to Defendants' motions, Plaintiff filed an Amended Complaint.

Even though Plaintiff had the benefit of reviewing Defendants' motions and briefs regarding the deficiencies in her original Petition, her Amended Complaint fails to state a viable claim. Plaintiff has thus demonstrated that the deficiencies cannot be cured and that further leave to amend would be futile. Accordingly, the Department and Board request that all claims asserted against them be dismissed without leave to amend. *See Randall v. Gov't Employees Ins. Co.*, 2010 WL 1438900, at *1 (W.D. Okla. 2010) (noting that denying leave to amend is proper if the plaintiff has failed "to cure deficiencies by amendments previously allowed" or if amendment would be futile (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

## STANDARD OF REVIEW

In examining whether the allegations in a complaint are sufficient to withstand a motion to dismiss, only "well-pleaded facts, as distinguished from conclusory

allegations" are accepted as true. *Trant v. Oklahoma*, 426 F. App'x 653, 659 (10th Cir. 2011). A complaint must allege enough facts, taken as true, "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim that is merely conceivable is insufficient—a plaintiff must nudge her claims "across the line from conceivable to plausible." *Id*. Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

In the present case, Plaintiff's Amended Complaint bears the hallmarks of legal conclusions and formulaic recitations. Moreover, the facts that Plaintiff does allege reveal that most of her claims are legally barred.

## ARGUMENTS AND AUTHORITIES

**I.     The Board should be dismissed because it is not a separate, suable entity and the claims against it are superfluous.**

The Board should be dismissed from this case because it is not an independent legal entity—it is the governing body of the Department. Further, Plaintiff's claims against the Board are duplicative of those asserted against the Department.

### A.     The Board is not a separate, suable entity.

If a party is merely a governing body and lacks an independent legal existence, it cannot properly be joined as a party. *Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty. Okla.*, 954 F. Supp. 2d 1292, 1294 (N.D. Okla. 2012). In *Primeaux*, the plaintiff sued a school district and a school board. The court noted that under Oklahoma's statutory scheme, the "governing body" of each school district is the "board of education." *Id*. The court concluded that the school district was "the entity legally responsible for actions

4

of its governing board," and it dismissed the board from the case. *Id*. at 1295; *see also*
*Rubio v. Turner v. Unified Sch. Dist. No. 2012*, 453 F. Supp. 2d 1295 (D. Kan 2006)
(dismissing all claims against a board of education upon concluding that the "board of
education is merely the governing body of the school district and is not a separate legal
entity"); *Heslep v. Americans for African Adoption, Inc.*, 890 F. Supp. 2d 671, 678-79
(N.D. W. Va. 2012) (holding that a corporate board of directors "is not a legal entity
separate and apart from the corporation itself and, thus, should not be named as a separate
party").

Here, the Department exercises "all functions of the state in relation to the
administration and operation of all state facilities for the care and treatment of the
mentally ill and drug- or alcohol-dependent persons." 43A O.S. § 2-101(A)(3). The
Board is the governing body of the Department and has no independent legal existence.
43A O.S. § 2-101(A)(2). Therefore, the Board should be dismissed from this case.

**B.     The claims against the Board are duplicative.**

Even if the Board was a separate legal entity, the claims against it are superfluous.
When claims against the board of a governmental agency are duplicative of claims
against the agency itself, the claims cannot be maintained against both. *See, e.g.*,
*Primeaux*, 954 F. Supp. 2d at 1295 ("[W]here an Oklahoma school district is named as a
defendant, any claims against the school board are duplicative of claims against the
school district"); *Rubio*, 453 F.Supp.2d at 1300 ("[B]ecause the board of education is
merely the governing body of the school district and is not a separate legal entity, any
judgment against the board necessarily is against the school district. . . . A suit against

both entities is duplicative."). *See also Flarey v. Youngstown Osteopathic Hosp.*, 783 N.E.2d 582, 585 (Ohio App. 2002) (holding that a suit against a corporate board of directors "would be nonsensical" and "would be, for all practical purposes, pointless").

In this case, all claims against the Board are also asserted against the Department. Therefore, the claims against the Board are redundant, serve no practical purpose, and should be dismissed.[2]

## II. The "reporting wrongful activities" portions of Plaintiff's *Burk* claim are barred by *Shephard v. Compsource*.

In *Burk v. K–Mart*, 770 P.2d 24 (Okla.1989), the Oklahoma Supreme Court carved out an exception to the general rule of at-will employment and created a tort claim for employees who are discharged in violation of public policy. To bring a *Burk* tort claim, an employee must identify a public-policy basis for her claim. *Vasek v. Bd. of Cnty. Comm'rs*, 186 P.3d 928, 932 (Okla. 2008). An employee may not pursue a *Burk* claim if an existing statutory remedy adequately protects the public policy. *Id.*

### A. Plaintiff's claims are covered by an existing statutory remedy—the Whistleblower Act.

The purpose of the Oklahoma Whistleblower Act "is to encourage and protect the reporting of wrongful governmental activities." 74 O.S. § 840–2.5(A). The bulk of Plaintiff's "tort claim for wrongful discharge" (*Amended Complaint* at ¶¶ 103-15) is premised on allegations that she: (a) "spoke out on issues related to sexual harassment in the department and urged that such claims be investigated," *id.* at ¶ 108, and (b) "freely

---

[2] Because the Board is not a separate legal entity, the remainder of this Motion refers to the Board and Department collectively as the "Department." However, to the extent this Court rules that the Board is a separate party, the arguments asserted on behalf of the Department apply equally to the Board.

express[ed] her sentiments regarding Defendants' refusal to publish an official report of wrongdoing at an Oklahoma licensed alcohol and drug treatment facility," *id. at* ¶ 114.[3] In other words, Plaintiff alleges she was a state employee who was terminated for reporting "wrongful" governmental activities. Therefore, Plaintiff's allegations fall within the ambit of the Whistleblower Act.

**B.** **The Whistleblower Act adequately protects the public policy of protecting employees who report wrongful governmental activities.**

In *Shephard v. Compsource*, 209 P.3d 288, 292 (Okla. 2009), the Oklahoma Supreme Court held that because the Legislature omitted a private right of action to enforce the Whistleblower Act, the remedies in the Act are "sufficient to protect the Oklahoma public policy goal of protecting employees who report the wrongful governmental activities." Consequently, the Whistleblower Act provides the exclusive remedy for an employee who claims she was terminated for reporting wrongful governmental activities, and she may not "resort to a tort cause of action." *Id*. at 293; *see also Rouse v. Grand River Dam Auth.*, 326 P.3d 1139, 1142 (Okla. 2014) (emphasizing that "jurisdiction over protected whistleblower conduct and retaliation . . . lies with the Merit Protection Commission" and "state employees are limited to the remedies provided in the Whistleblower Act").

**C.** ***Burk* claims premised on allegations of whistleblowing are barred even if the plaintiff relies upon sources of public policy other than the Act.**

Although Plaintiff's claims are covered by the Whistleblower Act, she attempts to circumvent it by relying upon sources of public policy other than the Act to support her

---

[3] Plaintiff also asserts a *Burk* tort for alleged age discrimination. The age-discrimination portion of Plaintiff's *Burk* claim is addressed *infra* in Part IV.

*Burk* claim. Specifically, Plaintiff relies upon 25 O.S. § 1302, 43A O.S. § 3-402, and Art. II § 22 of the Oklahoma Constitution. *Amended Complaint* at ¶¶ 109, 112, 115.

The Department is aware that this Court has previously allowed whistleblowing claims to proceed under a *Burk* theory where the plaintiff identified sources of public policy other than the Act. *Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1303-04 (W.D. Okla. 2012); *Newby v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*, 2011 WL 6883735, at *1 (W.D. Okla. 2011). In *Trant*, this Court held that a plaintiff's whistleblowing claim was not barred because "unlike in *Shephard*," the plaintiff asserted "Article 2 § 22 as the public-policy basis for his *Burk* claim, not the Whistleblower Act." 874 F. Supp. 2d at 1303-04; *see also Newby*, 2011 WL 6883735, at *1 (distinguishing *Shephard* because the plaintiff did "not rely on the Oklahoma Whistleblower Act to establish the public policy").

However, the plaintiff in *Shephard* did <u>not</u> rely on the Whistleblower Act as the public-policy basis for her *Burk* claim. The plaintiff in *Shephard* asserted "her termination was contrary to the clearly established public polices set out in 74 O.S. § 501, et seq.; 21 O.S. § 358; 85 O.S. § 138.2, 145 inter alia and Okla. Const. Art II, § 22." *Appellant's Additional Opening Brief* at 1, *Shephard*, 209 P.3d 288 (Okla. June 10, 2008) (No. SC 104,865) (attached as Ex. 1); *see also Plaintiff's First Amended Petition* at ¶¶ 8, 14, *Shephard*, 209 P.3d 288 (Dist. Ct. Okla. Cnty. Mar. 7, 2007) (No. CJ-2007-878) (attached as Ex. 2).

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - M2D_Amend_Cmplt_FINAL.docx

Consequently, the dispositive issue under *Shephard* is not whether the plaintiff relies upon sources of public policy other than the Whistleblower Act.[4] Instead, the dispositive issue is whether the plaintiff's allegations are covered by the Act. *See Shephard*, 209 P.3d at 291 (holding that the plaintiff "and her alleged reporting of illegal travel claims [were] covered by the Whistleblower Act," even though the plaintiff did not rely on the Act as the public-policy basis for her *Burk* claim).[5] If a plaintiff's allegations are covered by the Act, the Act is the plaintiff's exclusive remedy. *Id.* at 293.

**D.      Because Plaintiff's allegations are covered by the Act, she cannot maintain a *Burk* claim.**

Under the Whistleblower Act, the "wrongful governmental activities" that state employees are protected in reporting include "a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety."  74 O.S. § 840–2.5(B)(2).  "Mismanagement" means "fraudulent activity, criminal misuse of funds or abuse or violation of a well-established, articulated, clear and compelling public

---

[4] If a state employee, after being discharged for whistleblowing, was able to bring a *Burk* tort by pointing to sources of public policy other than the Act, the holding in *Shephard* would be eviscerated.  For example, a discharged state employee could always circumvent the Act by relying on Art II, § 22 of the Oklahoma Constitution (free speech).  "Whistleblowing" is, by definition, a type of speech.  The Act protects employees who are retaliated against for **speaking** about wrongful governmental activities.  Therefore, state employees discharged for whistleblowing could invariably sidestep the Act by asserting a *Burk* tort based upon Art. II, § 22.

[5] Additionally, in *Rouse*, 326 P.3d at 1142, the court held that a plaintiff who relied on "the compelling public interest in deterring unlawful exploitation of wage earners" in support of his *Burk* claim was "limited to the remedies provided in the Whistleblower Act."  *See Petition* at ¶ 23, *Rouse*, 326 P.3d 1139 (Dist. Ct. Mays. Cnty. Feb. 25, 2013) (No. CJ-13-41) (attached as Ex. 3).

policy." 74 O.S. § 840–2.5(E)(3). Thus, state employees who claim they were retaliated against for reporting violations of public policy are covered by the Act.

Here, Plaintiff's *Burk* claims are premised on allegations that she was retaliated against for reporting "public policy violations."[6] *Amended Complaint* at ¶ 107. Therefore, her claims are covered by the Whistleblower Act and she may not "resort to a tort cause of action." *Shephard*, 209 P.3d at 293. Accordingly, the "reporting wrongful activities" portions of Plaintiff's *Burk* tort claim should be dismissed without leave to amend.[7]

## III. Plaintiff's negligence claim is both legally and factually deficient.

Plaintiff's negligent training/supervision claim (*Amended Complaint* at ¶¶ 98–102) should be dismissed because: (a) it is unlikely the Oklahoma Supreme Court would recognize such a claim in the context of alleged harm to a co-employee rather than a third-party, (b) the Department is immune from liability under the Oklahoma

---

[6] Plaintiff also alleges she "has legitimate knowledge of complaints against NARCONON Arrowhead." *Amended Complaint* at ¶ 39. However, "Oklahoma has not extended the *Burk* tort to plaintiffs who merely have knowledge of their employer's [allegedly] improper acts." *Pitts v. Elec. Power Sys., Inc.*, 2008 WL 2364998, at *2 (N.D. Okla. 2008). Furthermore, Plaintiff's *Burk* claim is barred to the extent it relies upon her "differences of opinion or dissatisfaction with discretionary management decisions and the like." *Martin v. Weyerhaeuser Co.*, 312 F. App'x 142, 147 (10th Cir. 2009) (quoting *Barker v. State Ins. Fund*, 40 P.3d 463, 469-70 (Okla. 2001)). Importantly, the course of action the Department takes following an investigation is a discretionary management decision. Okla. Admin. Code §§ 450:1-9-9(a) – (b).

[7] Plaintiff's allegations cannot be construed as a claim arising under the Whistleblower Act because she did not allege that she exhausted her administrative remedies; therefore, Plaintiff failed to invoke this Court's jurisdiction to hear such a claim. *See Capps v. Oklahoma ex rel. Office of Mgmt. & Enter. Servs.*, 2014 WL 2949461, at *4 (W.D. Okla. 2014).

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - M2D_Amend_Cmplt_FINAL.docx

Governmental Tort Claims Act ("GTCA"); and (c) the claim is nothing more than a formulaic recitation of the elements of a cause of action.

### A. Plaintiff does not have a cognizable claim under Oklahoma law.

In deciding whether Plaintiff has asserted a viable cause of action, this Court must "predict how the Oklahoma Supreme Court would rule." *Benedix v. Indep. Sch. Dist. No. I-007 of Oklahoma Cnty., Okla.*, 2009 WL 975145, at *2 (W.D. Okla. 2009). Under Oklahoma law, a claim for negligent training/supervision against an employer is "based on an employee's harm to *a third party* through employment." *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999) (emphasis added).

The Oklahoma Supreme Court has never recognized a cause of action for negligent training/supervision "in the context of harm to a co-employee rather than a third party." *See Stewart v. Oklahoma ex rel. Oklahoma Office of Juvenile Affairs*, 2013 WL 6670291, at *7 (W.D. Okla. 2013). Thus, if this Court were to allow Plaintiff to bring a negligent training/supervision claim based on her discharge from employment, it would be creating a new exception to Oklahoma's at-will employment doctrine. *See City of Jenks v. Stone*, 321 P.3d 179, 183 n.6 (Okla. 2014) (observing that the only recognized exception to the at-will employment doctrine in Oklahoma is a *Burk* tort, which is a "limited public policy exception"); *Diffenderfer v. Aeromet, Inc.*, 852 P.2d 798, 800 (Okla. Civ. App. 1993) ("*Burk* defines the employment-at-will conditions within this state and does not recognize the plaintiff's allegation of 'negligent termination' in employment practices.").

A majority of jurisdictions that "have considered whether to impose liability for negligence in the context of employment terminations have declined to do so." *Vice v. Conoco, Inc.*, 150 F.3d 1286, 1292 (10th Cir. 1998) (collecting cases from Alaska, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Montana, Nebraska, New Mexico, Washington, Wisconsin, and Wyoming); *see also Polson v. Davis,* 895 F.2d 705, 710 (10th Cir. 1990) (applying Kansas law and rejecting an employee's attempt to circumvent the at-will employment doctrine through the common-law tort of negligent supervision).

There is no evidence that the Oklahoma Supreme Court would recognize Plaintiff's negligent training/supervision cause of action. Such a cause of action would "contradict the limitations on the claims available to discharged employees established by the Oklahoma Supreme Court" and "conflict with Oklahoma's employment-at-will doctrine." *Vice*, 150 F.3d at 1292.

## B. The Department is immune under the Tort Claims Act.

Even if Plaintiff's negligence claim was viable against a private employer, the Department is immunized from the claim under the "discretionary function" exemption of the GTCA. 51 O.S. § 155(5). *See Benedix*, 2009 WL 975145, at *4 ("Plaintiff's claim against the school district for negligence in his hiring, supervision and retention is barred by the discretionary function exemption of § 155(5)."); *Allen v. Justice Alma Wilson Seeworth Acad., Inc.*, 2012 WL 1298588, at *2 (W.D. Okla. 2012) (granting the defendant's motion to dismiss after holding that decisions involving the training, supervision, and retention of upper-level administrators are "the sort of discretionary decisions to which [Section 155(5)] appears to be directed").

Further, to the extent Plaintiff's negligence claim is based on an alleged failure of the Department to enforce its institutional policies, her claim is barred by 51 O.S. § 155(4). *See Houston v. Indep. Sch. Dist. No. 89 of Oklahoma Cnty.*, 949 F. Supp. 2d 1104, 1111 (W.D. Okla. 2013) (holding that the defendant was immune from the plaintiff's negligent supervision/retention claim under Sections 155(4) and (5)).

### C. Plaintiff's conclusory allegations fail to state a claim.

Finally, even if Plaintiff had a cognizable negligence claim and it was not barred by the GTCA, she has failed to plead sufficient facts to support such a claim. To state a negligent training/supervision claim, a plaintiff must allege facts showing that at the time of the tortious incident, the employer had reason to believe the employee "would create an undue risk of harm to others." *N.H.*, 998 P.2d at 600. "The critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage." *Id.*

In *Asojo v. Oklahoma ex rel. Board of Regents of University of Oklahoma*, 2012 WL 3679539 (W.D. Okla. 2012), this Court was faced with a comparable situation: generic allegations of "negligent training, supervision, and retention." This Court reasoned that even if the defendant was not immune under the GTCA, the plaintiff had failed to allege facts showing the defendant had reason to know that one of its employees was likely to "commit the very harm for which damages are sought." *Id.* at *5. The *Asojo* court dismissed the plaintiff's negligence claim and concluded "it would be futile to attempt to amend this cause of action." *Id.* at *14.

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - M2D_Amend_Cmplt_FINAL.docx

The allegations of Plaintiff's Amended Complaint suffer the same fatal deficiency. The entire cause of action is stated in a few short paragraphs. *Amended Complaint* at ¶¶ 99-102. Plaintiff alleges that the Department failed to "train and supervise its Leadership employees" and that the Department "knew that Leadership employees had a tendency to show preferential treatment" and "misuse the kind of authority given to them." *Id.* at ¶¶ 100-01. These paragraphs are formulaic recitations unsupported by any facts showing how the Department failed to properly train, or how the Department knew about its employees' alleged propensities (e.g., Plaintiff does not allege facts relating to similar terminations at the Department). Therefore, Plaintiff has failed to state a plausible claim to relief.

Furthermore, for the reasons outlined in Parts III.A-B above, any attempt to amend Plaintiff's negligence claim would be futile. *See, e.g.*, *Houston*, 949 F. Supp. 2d at 1111. Therefore, Plaintiff's negligence claim should be dismissed without leave to amend.

## IV. Plaintiff's age-discrimination claims are legally barred.

Plaintiff alleges she was discriminated against based on her age because she was not asked to participate in a master's degree program. *Amended Complaint* at ¶¶ 66-79, 116-22. Plaintiff attempts to assert her age-discrimination claim under the ADEA[8] and as a *Burk* claim. Plaintiff's claims fail because the Department is immune from ADEA liability, and Oklahoma has abolished common-law claims for age discrimination.

---

[8] 29 U.S.C. §§ 621 – 634.

**A.      The Department is immune from liability under the ADEA.**

Plaintiff's ADEA claim (*Amended Complaint* at ¶¶ 66 - 79) should be dismissed because the Department is immune from liability.  The Department is an arm of the State.  *See* 43A O.S. § 2-101; *Baylis v. Oklahoma Dep't of Corr.*, 2007 WL 4287612, at *3 (W.D. Okla. 2007).  Therefore, a suit against the Department is treated as a suit against the State.  *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013).

In *Kimel v. Florida Board of Regents*, 528 U.S. 62, 91 (2000), the United States Supreme Court held that the ADEA did not validly abrogate the States' sovereign immunity under the Eleventh Amendment.   Importantly, the sovereign immunity embodied by the Eleventh Amendment is a divisible concept that includes both immunity from suit and immunity from liability.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) (holding that Eleventh Amendment immunity exists both to "prevent federal-court judgments that must be paid out of a State's treasury" and to "avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties")  (internal alteration and quotation marks omitted).  Thus, "a state may waive its immunity from suit in a federal forum while retaining its immunity from liability." *Trant v. Oklahoma*, 754 F.3d 1158, 1173 (10th Cir. 2014).

Consequently, although the Department waived its immunity from suit by consenting to the removal of this case, it did not waive its immunity from liability.  *See id.* at 1172.  The question of whether a state has waived its immunity from liability is addressed under state law.  *Id*. at 1173-74.  Money damages cannot be awarded against a state unless it "unequivocally waives its Eleventh Amendment immunity."  *Reed v.*

*Dowling*, 2015 WL 769854, at *2 (W.D. Okla. 2015) (citing *Guttman v. Khalsa,* 669 F.3d 1101, 1110 (10th Cir. 2012)).

Oklahoma has not unequivocally waived its immunity from liability under the ADEA. In fact, when Oklahoma waived its immunity for certain state-law claims, it made clear that "it is not the intent of the state to waive ***any*** rights under the Eleventh Amendment to the United States Constitution." *See* 51 O.S. § 152.1(B) (emphasis added); *see also Freeman v. State ex rel. Dep't of Human Servs.*, 145 P.3d 1078, 1080 (Okla. 2006) (holding that "the State of Oklahoma has not consented to a private enforcement action under [the FLSA] against an agency of the State of Oklahoma."); *Grizzle v. Oklahoma Dep't of Veterans Affairs*, 2006 WL 3227880, at *5 (E.D. Okla. 2006) ("[T]here is neither a valid Congressional abrogation of Eleventh Amendment immunity nor a waiver of sovereign immunity by the State of Oklahoma in connection with . . . the ADEA."). The Department is thus immune from liability on Plaintiff's ADEA claim.

### B.    The Oklahoma Legislature abolished *Burk* claims for age discrimination.

Plaintiff also attempts to assert an age-discrimination claim in the form of a *Burk* tort. *Amended Complaint* at ¶¶ 116-22. However, effective November 1, 2011, the Oklahoma legislature amended the Oklahoma Anti-Discrimination Act ("OADA") to abolish common-law remedies for age-discrimination claims. *See* 25 O.S. §§ 1101(A), 1350(A). "The remedies abolished include *Burk* claims." *Peters v. Black Tie Value Parking Serv., Inc.*, 2013 WL 149773, at *3-*4 (W.D. Okla. 2013); *see also MacDonald v. Corporate Integris Health*, 321 P.3d 980, 984 (Okla. 2014). Because the OADA

16

abolished *Burk* claims for age discrimination, the portion of Plaintiff's *Burk* claim alleging age discrimination should be dismissed.[9]

## C. Leave to amend to assert a claim under the OADA would be futile.

Plaintiff should not be granted an opportunity to amend her Amended Complaint to assert an age-discrimination claim under the OADA because the claim would be time-barred. Plaintiff alleges that on June 6, 2014, she "delivered a Notice of Tort Claim to the Office of the Risk Management Administrator . . . ." *Amended Complaint* at ¶ 17. Plaintiff apparently intended to attach the Notice of Tort Claim to her Amended Complaint but did not. However, the Notice was attached to her original Petition [Dkt. No. 1, Ex. 1], and it is attached to this Motion as Exhibit 4 for ease of reference.

On page 3 of her Notice of Tort Claim, Plaintiff states that:

> Approximately **one to two years ago**, ODMHSAS developed a master's degree program for employees. Not only was Ms. Poff not offered an opportunity to participate despite asking Terri White about it, she was directly excluded from consideration based upon her age.

Plaintiff thus alleges that the age discrimination occurred on or before June 6, 2013.

Under the OADA, "an aggrieved party must, within one hundred eighty (180) days from the last date of alleged discrimination, file a charge of discrimination . . . ." 25 O.S. § 1350(B). Plaintiff alleges she filed her charge of discrimination on January 24, 2014. *Amended Complaint* at ¶ 15. One hundred eighty days before January 24, 2014, is July

---

[9] Further, *Burk* only provides a remedy for an employee's actual or constructive **discharge**. *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1198 (10th Cir. 2010). Here, Plaintiff does not allege that she was discharged based on her age (nor could she plausibly do so). Plaintiff only alleges that she "was not given an opportunity to apply for or participate in a Master's Degree Program." *Amended Complaint* at ¶ 117. Therefore, Plaintiff's *Burk* claim may be dismissed on this basis as well.

28, 2013.  Because Plaintiff alleges the age discrimination occurred on or before June 6, 2013, her age-discrimination claim is time-barred under state law.  Therefore, Plaintiff's age-discrimination claims should be dismissed without leave to amend.

## V.     Plaintiff fails to allege sufficient facts to support her sex discrimination claim.

Plaintiff attempts to state a Title VII sex-discrimination claim (*Amended Complaint* at ¶¶ 80-86) even though she admits she was discharged on the same day as a male investigator.  (*Amended Complaint* at ¶¶ 25-26).  The only paragraph in Plaintiff's Amended Complaint that contains any "factual" allegations relating to sex discrimination is paragraph 85, which reads as follows:

> 85.  Kimberly Poff was treated differently than four other male employees facing similar investigations and suspensions.  These four male employees had multiple allegations against them of severe misconduct that included falsification of documents, fraud, hostile, offensive, and intimidating work environment, sexual harassment, consumer abuse, racial and sexual discrimination and other inappropriate conduct.  Yet, none of these employees were treated as harshly as Poff has been treated.

Notably, Plaintiff does not name the "four other male employees" or provide any meaningful information about how she was treated differently.  Nor does she support her allegations with any corroborating facts, such as gender-based comments.

Plaintiff provides more specifics in the EEOC Intake Questionnaire and Charge of Discrimination attached as exhibits to her original Petition.  However, Plaintiff's allegations in her EEOC filings fail to show she was "similarly situated" to her comparators.  Thus, even if this Court considers those documents in evaluating the sufficiency of Plaintiff's Amended Complaint, her disparate-treatment claim is factually deficient for several reasons:

First, Plaintiff does not allege that any of her comparators had jobs that entailed similar duties and responsibilities. *See Igwe v. Saint Anthony's Hosp.*, 804 F. Supp. 2d 1183, 1192 (W.D. Okla. 2011), *aff'd*, 464 F. App'x 685 (10th Cir. 2012) (holding that the plaintiff and her comparator were not similarly situated because "[t]heir job levels and job responsibilities were different."); *Mitchell v. City of Wichita*, 140 F. App'x 767, 780 (10th Cir. 2005) (holding that a comparator must be "subject to the same responsibilities, expectations, and discipline" as the plaintiff for disparate disciplinary action to be relevant).

Second, Plaintiff fails to identify the company policies applicable to her comparators' misconduct or the "standards governing [their] performance evaluation and discipline." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000); *see also Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 923 (10th Cir. 2004) (holding that discipline administered under a different policy did "not provide a helpful comparison" to the plaintiff's case); *Hanlen v. Henderson*, 215 F.3d 1336 (10th Cir. 2000) (unpublished) (holding that comparators were not similarly situated because the plaintiff "was subject to different standards").

Third, Plaintiff does not identify when the allegedly more favorable treatment occurred. The Tenth Circuit has held that allegedly discriminatory events may be "too remote in time to be considered" when they occurred "over one and one-half years before" the adverse employment action. *Webb v. Level 3 Commc'ns, LLC*, 167 F. App'x 725, 731 (10th Cir. 2006); *see also Pai v. Nicholson*, 2007 WL 1541328, at *4 (W.D. Okla. 2007) ("Plaintiff's evidence as to this temporally remote incident does not suggest

he was treated differently from others."). Further, allegedly discriminatory events that occurred any time after the contested action "are not sufficiently connected to the employment action in question to demonstrate pretext." *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000).

Fourth, Plaintiff does not identify who her comparators' supervisors were. "To establish that a comparison employee is similarly situated, the plaintiff must show the employee deals with the same supervisor . . . ." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 718 (10th Cir. 2014); *see also Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (accord).

Fifth, Plaintiff lists *five* male employees in her EEOC filings, but in her Amended Complaint, she alleges she "was treated differently than *four* other male employees." *Amended Complaint* at ¶ 85 (emphasis added). Accordingly, it is unclear which male employees even form the basis of Plaintiff's disparate-treatment claim.

Compare Plaintiff's inadequate proffers with an amended complaint filed in *McDonald v. Glanz*, 2013 WL 3279805, at *4 (N.D. Okla. 2013), where a detention officer claimed Caucasian co-workers received more favorable treatment when returning to work after injuries. The *McDonald* court set out the applicable standard and concluded the plaintiff failed to meet it:

> To show disparate treatment, McDonald must allege and prove she was similarly situated to the Caucasian employees "in all relevant respects." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

The Amended Complaint alleges "Gary Brown is a white male who was placed in master control in the front lobby after suffering an injury and [t]his was a position that allowed one to sit," and "Bryan Ayers is a white male who was placed in a position in the Courthouse when he was unable to remain on patrol after an injury." [*Id.*]. **The Amended Complaint does not, however, state the two men are detention officers, nor does it allege their job responsibilities were similar to McDonald's. Additionally, it fails to state whether they had the same supervisor as McDonald, the nature and/or severity of their impairments, or whether they returned to work while a "no light duty" policy was in effect. In short, the Amended Complaint fails to allege facts supporting a plausible Title VII disparate treatment claim.**

*Id.* (emphasis added); *see also Ehireman v. Glanz*, 2014 WL 5431202, at *6 (N.D. Okla. 2014) (dismissing a disparate-treatment claim because the plaintiff failed to identify his comparators' supervisors, the "standards governing [his comparators'] performance evaluation and discipline," or the "policy or procedure" that his comparators had allegedly violated).

Likewise, here, Plaintiff's allegations fail to show her comparators were "similarly situated in all relevant respects." *McGowan,* 472 F.3d at 745. Plaintiff fails to identify: (1) the four comparators on whom she is basing her disparate-treatment claim, (2) her comparators' job duties and responsibilities, (3) the policies applicable to her comparators' alleged misconduct, (4) the standards governing her comparators' performance evaluation and discipline, (5) when the allegedly more favorable treatment occurred, and (6) who her comparators' supervisors were at the time of the alleged misconduct. Accordingly, Plaintiff has failed to allege facts supporting a plausible Title VII disparate-treatment claim.

Additionally, Plaintiff has already had an opportunity to amend her allegations. Plaintiff's failure to plead sufficient facts in her Amended Complaint (even after she had

the benefit of reviewing Defendants' Motions to Dismiss pointing out these deficiencies) demonstrates that she is unable to state a plausible sex-discrimination claim. Consequently, Plaintiff's sex-discrimination claim should be dismissed without leave to amend.

## VI.    Plaintiff's request for punitive damages should be dismissed.

Plaintiff requests that she be awarded punitive damages.  *Amended Complaint* at p. 22.  Oklahoma law is clear that "[n]o award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages."  51 O.S. § 154(C).  The OADA does not authorize punitive damages.  25 O.S. § 1350(G).  Punitive damages are not available in ADEA cases.  *Villescas v. Abraham*, 311 F.3d 1253, 1260 (10th Cir. 2002).  And the federal statute that authorizes punitive damages in Title VII cases expressly exempts "a government, government agency or political subdivision."  42 U.S.C. § 1981a(b)(1).  Therefore, Plaintiff's request for punitive damages should be dismissed as to the Department.

## <u>CONCLUSION</u>

Plaintiff fails to plead a single viable cause of action against the Department or the Board.  It is important that the Court exercise its gatekeeper role at this stage to require Plaintiff to properly plead viable, sustainable claims.  Otherwise, the Court and the parties will spend unnecessary time and resources during discovery, dispositive motions and pretrial proceedings focusing on claims with no basis in law or fact.  Because Plaintiff fails to state a single plausible claim for relief against the Department or the Board, these Defendants respectfully request that all claims against them be dismissed.

Respectfully submitted,

/s/ *Victor F. Albert*

VICTOR F. ALBERT, OBA #12069
ADAM P. MONTESSI, OBA #31157
CONNER & WINTERS, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK  73102
Telephone:  (405) 272-5711
Facsimile:  (405) 232-2695
valbert@cwlaw.com
***Attorneys for Defendants, the State of
Oklahoma ex rel. the Oklahoma Department
of Mental Health and Substance Abuse
Services and the Board of Directors for the
Oklahoma Department of Mental Health and
Substance Abuse Services***

## CERTIFICATE OF SERVICE

I certify that on March 11, 2015, this Motion to Dismiss was filed in the United

States District Court for the Western District of Oklahoma, and a true and correct copy of

the Motion was served, via ECF, upon the following:

Rachel L. Bussett, OBA #19769
Bussett Law Firm, PC
3555 N.W. 58th Street, Suite 1010
Oklahoma City, OK  73112
Telephone:  (405) 605-8073
Facsimile:  (405) 601-7765
rachel@bussettlaw.com
**Attorney for Plaintiff**

Jeremy Tubb, OBA #16739
Matthew S. Panach, OBA #22262
FULLER, TUBB, BICKFORD & KRAHL
201 Robert S. Kerr, Suite 1000
Oklahoma City, OK  73102
Telephone:  (405) 235-2575
Facsimile:  (405) 232-8384
jeremy.tubb@fullertubb.com
panach@fullertubb.com
**Attorneys for Defendants**
**Terri White, Durand Crosby, and**
**Cratus Dewayne Moore**

/s/ *Victor F. Albert*
VICTOR F. ALBERT

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - M2D_Amend_Cmplt_FINAL.docx