## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Case No. 5:14-cv-01438-C

(1)   KIMBERLY POFF,

Plaintiff,

v.

(1)   STATE OF OKLAHOMA *ex rel* THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES;

(2)   THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES, *et al*

Defendants.

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT BY DEFENDANTS STATE OF OKLAHOMA EX REL. THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES AND THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES

VICTOR F. ALBERT, OBA #12069
MATTHEW L. WARREN, OBA #31260
CONNER & WINTERS, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK  73102
Telephone:  (405) 272-5711
Facsimile:  (405) 232-2695
valbert@cwlaw.com
mwarren@cwlaw.com
*Attorneys for Defendants*

**March 1, 2016**

# <u>TABLE OF CONTENTS</u>

BRIEF IN SUPPORT ................................................................................................ 2

INTRODUCTION ................................................................................................... 2

UNDISPUTED MATERIAL FACTS ...................................................................... 4

STANDARD OF REVIEW ..................................................................................... 13

ARGUMENT AND AUTHORTIY ......................................................................... 14

    I.    Summary Judgment is Appropriate on Poff's Title VII Gender
        Discrimination Claim. ............................................................................... 14

        A.    The Department Terminated Poff's Employment Because She
               Violated Department Policy by Failing to Maintain
               Confidentiality with Respect to an Ongoing Investigation
               within the Department. ................................................................ 16

        B.    Poff has Failed to Adduce Evidence of Pretext for Gender
               Discrimination. ............................................................................ 19

    II.    Summary Judgment is Independently Appropriate as to the Board
        Because the Governing Body of a Political Subdivision is not a
        Separate Employer Within the Meaning of Title VII, and Defendants
        Confess that the Department is the Proper Party in this Lawsuit................ 27

CONCLUSION ....................................................................................................... 29

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - MSJ FINAL.docx

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Coors Brewing Co.*,
181 F.3d 1171 (10th Cir. 1999)..............................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .........................14

*Antonio v. Sygma Network, Inc.*,
458 F.3d 1177 (10th Cir. 2006)..............................................................19

*Baca v. Sklar*,
398 F.3d 1210 (10th Cir. 2005)..............................................................15

*Brown v. CSC Logic, Inc.*,
82 F.3d 651 (5th Cir. 1996)....................................................................19

*Bryant v. Farmers Ins. Exchange*,
432 F.3d 1114 (10th Cir. 2005)..............................................................19

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Adler v. Wal–Mart Stores,
Inc.,*
144 F.3d 664 (10th Cir.1998)..................................................................13

*David v. City and Cnty of Denver*,
101 F.3d 1344 (10th Cir. 1996)..............................................................22

*E.E.O.C. v. Flasher Co.*,
986 F.2d 1312 (10th Cir. 1992)..................................................21, 22, 23

*English v. Colorado Dep't of Corr.*,
248 F.3d 1002 (10th Cir. 2001)..............................................................26

*Flarey v. Youngstown Osteopathic Hosp.*,
783 N.E.2d 582 (Ohio App. 2002) .........................................................28

*Jones v. Denver Post Corp.,*
203 F.3d 748 (10th Cir.2000)..................................................................15

*Kelley v. Goodyear Tire & Rubber Co.,*
220 F.3d 1174 (10th Cir.2000)................................................................23

*Kendrick v. Penske Transp. Servs., Inc.*,
220 F.3d 1220 (10th Cir. 2000)........................................................passim

*Lockard v. Pizza Hut, Inc.*,
162 F.3d 1062 (10th Cir. 1998)..............................................................27

*Marx v. Schnuck Markets, Inc.*,
76 F.3d 324 (10th Cir.1996)....................................................................22

i

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................. 13

*McCowan v. All Star Maint., Inc.*,
    273 F.3d 917 (10th Cir. 2001) .............................................................................. 15

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................................ 15, 16, 29

*McGowan v. City of Eufala*,
    472 F.3d 736 (10th Cir. 2006) .............................................................................. 24

*Neal v. Roche*,
    349 F.3d 1246 (10th Cir.2003) ............................................................................. 22

*Plotke v. White*,
    405 F.3d 1092 (10th Cir. 2005) ............................................................................ 16

*Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty. Okla.*,
    954 F. Supp. 2d 1292 (N.D. Okla. 2012) ............................................................. 28

*Proud v. Stone*,
    945 F.2d 796 (4th Cir. 1991) ................................................................................ 19

*Randle v. City of Aurora*,
    69 F.3d 441 n. 14 (10th Cir.1995)......................................................................... 22

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000) ........................................................................................ 15, 16

*Riggs v. AirTran Airways, Inc.*,
    497 F.3d 1108 n.4 (10th Cir. 2007) ...................................................................... 23

*Rivera v. City and Cnty of Denver*,
    365 F.3d 912 (10th Cir. 2004)................................................................... 15, 23, 26

*Rubio v. Turner v. Unified Sch. Dist. No. 2012*,
    453 F. Supp. 2d 1295 (D. Kan 2006) ................................................................... 28

*Simpson v. Kay Jewelers*,
    142 F.3d 639 (3rd Cir.1998).................................................................................. 26

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993) .............................................................................................. 16

*Swackhammer v. Sprint / United Management Co.*,
    493 F.3d 1160 (10th Cir. 2007) ............................................................................ 16

*Texas Dept. of Community Affairs v. Burdine*,
    450, U.S. 248 (1981) ............................................................................................. 21

*Thomas v. Int'l Bus. Machs.*,
    48 F.3d 478 (10th Cir. 1995).................................................................................. 27

ii

*Wolf v. Prudential Ins. Co. of Am.,*
   50 F.3d 793, 796 (10th Cir.1995) ............................................................................ 13

*Young v. Dillon Cos., Inc.,*
   468 F.3d 1243 (10th Cir. 2006) ............................................................................... 19

*Zeigler v. J-M Mfg. Co., Inc.,*
   2010 WL 4922585, at \*6 (N.D. Okla. Nov. 29, 2010) ............................................ 23

## **Statutes**

43A O.S. § 2-101 .......................................................................................................... 28

## **Rules**

42 U.S.C. § 2000 ...................................................................................................... 27, 28

FED. R. CIV. P. 56 ....................................................................................................... 13

K:\VALB\Clients A-M\15640 Dept. & Board\0002 Poff, Kimberly\Pleadings (USDC-WDOK 14-cv-1438)\Poff - MSJ FINAL.docx

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)  KIMBERLY POFF, | |
| Plaintiff, | |
| v. | Case No. 5:14-cv-01438-C |
| (3)  STATE OF OKLAHOMA *ex rel* THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES; | |
| (4)  THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES, *et al* | |
| Defendants. | |

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT BY DEFENDANTS STATE OF OKLAHOMA EX REL. THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES AND THE BOARD OF DIRECTORS FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES

Defendants, the State of Oklahoma *ex rel*. The Oklahoma Department of Mental Health and Substance Abuse Services ("the Department") and The Board of Directors for the Oklahoma Department of Mental Health and Substance Abuse Services ("the Board"), pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, respectfully request this Court grant summary judgment on Plaintiff Kimberly Poff's ("Poff") sole remaining cause of action in this lawsuit.  As is set forth below, Poff's gender discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII" or the "Act"), is ripe for summary judgment because the undisputed material facts demonstrate that Poff has failed to adduce evidence of

pretext sufficient to refute the Department's legitimate, nondiscriminatory explanation for its termination decision.

## BRIEF IN SUPPORT

### INTRODUCTION

On August 23, 2013, Poff was offered the opportunity to resign from her position of Inspector General with the Department in lieu of being terminated.  Prior to this date, Poff had been the subject of an independent investigation conducted at the behest of the Department regarding whether she had breached confidentiality with respect to investigations and whether she had encouraged, or at least condoned, inappropriate investigative tactics by one of her subordinates, Michael Delong ("Delong"), with respect to alleged witness intimidation.

On July 26, 2013, Durand Crosby ("Crosby"), Chief Operating Officer, and Dewayne Moore ("Moore"), General Counsel, of the Department hired David Milnes ("Milnes"), an independent investigator, to investigate the allegations against Poff.  The findings were not favorable to Poff, leading her supervisor, Commissioner Terri White ("White"), to lose confidence in Poff's ability to satisfactorily perform her job.

In a meeting with White and Crosby on Friday, August 23, 2013, Poff was presented with these findings and offered the opportunity to resign her position or be terminated.  Poff asked for some time to think about her options and was afforded the opportunity to submit a resignation letter by end of business on Monday,

August 26, 2013, if she would like to elect resignation.[1]   On this same date Poff's subordinate, Delong, was similarly terminated from his position at the Department as a result of findings against him from the same independent investigation.   Unbeknownst to anyone at the Department, Poff and Delong each elected to secretly record their respective termination meetings.

Poff filed this action in state court on August 4, 2014, and Defendants properly removed the case to this Court and moved to dismiss all claims originally asserted therein.   Instead of responding to Defendants' motions, Plaintiff filed an Amended Complaint on February 25, 2015, alleging numerous causes of action against Defendants including *Burk* tort claims related to alleged retaliation for reporting dissatisfaction with an investigation into a consensual romantic relationship between two Department employees, and alleged retaliation related to an investigation into a drug treatment facility; a negligent training / supervision claim in violation of Oklahoma state law; an age discrimination claim in violation of the Age Discrimination in Employment Act ("ADEA"); a gender discrimination claim in violation of Title VII; as well as a claim for punitive damages.   On April 29, 2015, this Court dismissed with prejudice Poff's *Burk* tort claims, negligent training / supervision claim, ADEA claim, and request for punitive

---

[1] Whether Poff elected resignation is not relevant to this action, but remains a disputed fact that is relevant to ongoing litigation involving Poff and her subsequent employer, the Department of Human Services.   For purposes of this litigation, it is the Department's position that Poff was offered the opportunity to resign, but failed to submit a resignation letter as agreed and, therefore, was terminated.

3

damages.   Defendants now move for summary judgment on Poff's Title VII gender discrimination claim – the sole remaining cause of action in this lawsuit.

The undisputed material facts establish that Poff's Title VII claim is premised entirely on alleged circumstantial evidence of gender discrimination and, as such, is properly analyzed under the *McDonnell Douglas* burden-shifting framework.   Under *McDonnell Douglas*, the plaintiff carries the ultimate burden of persuasion.   As is set forth below, summary judgment is appropriate because the undisputed material facts reveal Poff's gender discrimination claim to be based on unsubstantiated conjecture and rank speculation.   Because Poff has failed to adduce evidence of pretext sufficient to refute the Department's legitimate, nondiscriminatory explanation for its termination decision, Defendants are entitled to judgment as a matter of law.

## UNDISPUTED MATERIAL FACTS

1.     Poff began working for the Department as Inspector General on December 17, 2007.     *See* Ex. 1, Deposition Transcript of Kimberly Poff dated Dec. 22, 2015 ("Poff Depo."), p. 18, lines 1 – 3; p. 19, lines 17 – 22.

2.     Poff was hired in a meeting with Crosby and White.  *See* Ex. 1, Poff Depo., p. 23, lines 8 – 11.  White made the decision to hire Poff.  *See* Ex. 2, Aff. of Terri White dated March 1, 2016 ("White Affidavit"), at 1.  At all relevant times, Crosby held the position of Chief Operating Officer for the Department and White served as Commissioner.  *Id.*, p. 17, lines 19 – 20.

3.     Poff was hired as an unclassified employee at the Department.  *See* Ex. 1, Poff Depo., p. 24, lines 2 – 4.  Her employment was at-will.  *Id.*, p. 24, lines 2 – 14.

4.      Poff's immediate supervisor at the Department was White, who like Plaintiff is a female.  *See* Ex. 1, Poff Depo., p. 9, lines 8-12 and p. 18, lines 4 – 6; Ex. 2, White Affidavit, at 1.

5.      Poff admits that she enjoyed a good working relationship with White.  *See* Ex. 1, Poff Depo., p. 49, lines 2 – 25.  Poff never heard White make any derisive or offensive comments about her on the basis of her sex.  *Id.*, p. 49, lines 23 – 25.

6.      On July 26, 2013, Crosby and Moore hired Milnes, an independent investigator, to investigate allegations the Poff breached confidentiality with respect to investigations and whether she had encouraged, or at least condoned, inappropriate investigative tactics by one of her subordinates, Michael Delong, with respect to alleged witness intimidation.  *See* Ex. 3, Aff. of Durand Crosby dated March 1, 2016 ("Crosby Affidavit"), at 1; Ex. 4, Aff. of David Milnes dated February 29, 2016 ("Milnes Affidavit"), at 1.

7.       Milnes is an independent investigator contracted by public and private agencies to conduct investigations.  *See* Ex. 4, Milnes Affidavit, at 1.  Because of Poff's position as Inspector General with the Department, Crosby believed it necessary to hire an outside investigator to handle Poff's investigation.  *See* Ex. 3, Crosby Affidavit, at 1.

8.      Milnes interviewed Poff and Delong as well as nine other witnesses before reporting his findings to the Department.  *See* Ex. 4, Milnes Affidavit, at 1

9.      Poff was placed on suspension with pay during the Milnes investigation.  *See* Ex. 3, Crosby Affidavit, at 1.

5

10.     Milnes' investigation uncovered that Poff met with Jill Amos ("Amos"), a Department employee, on July 8, 2013 in the parking lot of Shepherd Mall.  *See* Ex. 4, Milnes Affidavit, at 2.  Amos admitted in an interview with Milnes that she and Poff discussed specific facts regarding an ongoing investigation of alleged sexual harassment that was being investigated by an outside investigator, and in which she and Poff were both witnesses.  *Id*.

11.     Amos further admitted to Milnes that she and Poff discussed a previous Department investigation conducted by Poff and involving allegations of sexual harassment.  *See* Ex. 4, Milnes Affidavit, at 2.

12.     Milnes interviewed Delong as a part of his investigation.  *See* Ex. 4, Milnes Affidavit, at 2.  Delong admitted to Milnes  that on the morning of July 9, 2013, he made a statement that he was going to Shepherd Mall to interview – on an unrelated matter – the target of the same ongoing investigation that Poff and Amos had discussed the previous day.  *Id*.  Milnes informed Crosby that Delong stated during his interview that he intended to stand at the back of the room during a presentation that this individual was conducting and stare at him so as to make him feel intimidated.  *Id.*  This was also heard by Allen Shaffer ("Shaffer"), another Department employee.  *Id*.

13.     Hannah Cable ("Cable"), another Department employee, admitted in an interview with Milnes that she overheard Delong make these statements and that she reported them to Poff.  *See* Ex. 4, Milnes Affidavit, at 2.

6

14.    Poff admits that she was aware of Delong's statements before he went to Shepherd Mall.  *See* Poff Depo., p. 137, ln. 25 – p. 138, ln. 3; p. 138, ln. 16 – p. 139, ln. 4.

15.    On July 9, 2013, Delong did in fact go to Shepherd Mall and conduct an unscheduled interview with the target of his investigation.  *See* Ex. 4, Milnes Affidavit, at 3.   Delong's co-worker, Jason Maddox ("Maddox"), admitted to Milnes that he accompanied Delong to the interview and that, prior to the interview, Delong stood in the back of the room where the target was speaking.  *Id*.   Maddox, however, did not accompany Delong into the room because he was concerned that his presence, along with Delong's, may appear intimidating.  *Id*.

16.    Milnes further determined that, in his professional opinion, Poff was untruthful in answering his questions during her interview.  *See* Ex. 4, Milnes Affidavit, at 3.  This belief was based, in part, on the statements of other witnesses.  *Id.*

17.    Milnes reported his findings to Crosby and Moore, who in turn, reported them to Poff's supervisor, White.  *See* Ex. 4, Milnes Affidavit, at 3; Ex. 2, Crosby Affidavit, at 2; Ex. 2, White Affidavit, at 2.

18.    Department policy requires the Inspector General to maintain confidentiality with respect to ongoing and former investigations.  *See* Ex. 2, Crosby Affidavit, at 2; Ex. 5, ODMHSAS Department Policy 5.12, at 1.

19.    Based on these findings, White terminated Poff's employment on August 23, 2013.  *See* Ex. 1, Poff Depo., p. 23, lines 12 – 15; p. 159, lines 23 – 25; Ex. 2, White Affidavit, at 2 – 3; Ex. 3, Crosby Affidavit, at 2.  The decision to terminate Poff's

employment was made by White.  *See* Ex. 2, White Affidavit, at 2 – 3.   At this termination meeting, Poff requested and was given the opportunity to resign in lieu of termination.  *See* Ex. 1, Poff Depo., p. 165, ln. 22 – p. 166, ln. 7; Ex. 2, White Affidavit, at 3.

20.    Poff secretly recorded her termination meeting.  *See* Ex. 1, Poff Depo., p. 160, ln 17 – p. 161, ln 12.

21.    Poff alleges that she was discriminated against on the basis of sex by "Leadership" at the Department.  *See* Ex. 1, Poff Depo., p. 9, lines 8 – 16.  Poff defines Leadership as being Crosby, White, Carrie Slatton-Hodges ("Slatton-Hodges"), Steve Buck ("Buck"), and Moore.  *Id.*, p. 17, lines 2 – 8.

22.    Poff has no evidence of any member of Leadership or other Department employee making any derisive or offensive comments about her on the basis of her sex.  *See* Ex. 1, Poff Depo., p. 50, ln. 17 – p. 51, ln. 1; p. 53 lines 14 – 19; p. 185, ln. 25 – p. 186, ln. 4.

23.    Poff's Title VII claim is based entirely on alleged differential treatment on the basis of sex.  *See* Ex. 1, Poff Depo., p. 8, ln. 21 – p. 9, ln. 4.

24.    Poff contends that Moore, Chris Flanagan ("Flanagan"), James Bond ("Bond"), Jeff Smith ("Smith"), Randy May ("May") and Robert Harshaw ("Harshaw") were similarly situated male employees who were treated more favorably than she was treated with respect to disciplinary action within the Department.  *See* Ex. 1, Poff Depo., p. 187, lines 3 – 17; p. 189, lines 17 – 22.

8

25.     None of these men had the same supervisor as Poff.  *See* Ex. 1, Poff Depo., p. 190, lines 13 – 15; p. 190, lines 19 – 22; 191, ln. 23 – p. 192, ln. 18; 193, lines 6 – 8; p. 193, lines 12 – 14; p. 194, ln. 24 – p. 195, ln. 1; *see, e.g.* Ex. 2, White Affidavit, at 3.

26.     Moore and Bond reported to and were subject to the disciplinary standards of Crosby.  *See* Ex. 3, Crosby Affidavit, at 3.

27.     Flanagan, May, and Smith reported to and were subject to the disciplinary standards of Slatton-Hodges.  *See* Ex. 3, Crosby Affidavit, at 3.

28.     Harshaw reported to Larry Gross, Executive Director of the Griffin Memorial Hospital.  *See* Ex. 3, Crosby Affidavit, at 3.

29.     Poff alleges that each of these male employees at the Department were similarly-situated to her because they were either directors or heads of various divisions within the Department.  *See* Ex. 1, Poff Depo., p. 196, lines 5 – 7.  As Inspector General, Poff headed the investigations division at the Department.  *Id*., p. 196, lines 8 – 11. Moore headed the legal division.  *Id*.  Harshaw was the nursing director at a facility operated by the Department.  *Id*., p. 196, lines 17 – 23; Bond was the Administrator of Human Resources Development.  *Id*., p. 197, lines 2 – 6; Ex. 3, Crosby Affidavit, at 3. Flanagan was interim Director of the Oklahoma Crisis Center, a facility operated by the Department.  *Id*., p. 197, lines 7 – 9. May was Executive Director of Griffin Memorial Hospital, a Department facility in Norman, Oklahoma.  *Id*., p. 197, lines 10 – 12.  Smith was Executive Director of the Children's Recovery Center, a facility operated by the Department.  *Id*., p. 197, lines 15 – 17.

30.     Poff alleges that Moore was treated more favorably because he was not placed on suspension nor was he formally investigated with respect to his romantic involvement with a co-worker. *See* Ex. 1, Poff Depo., p., 197 ln. 24 – p. 198, ln. 1.

31.     Poff concedes that she is unaware of what the investigation into Moore's relationship with Robin Wilson ("Wilson") uncovered or whether the findings merited any disciplinary action. *See* Ex. 1, Poff Depo., p. 200, ln. 18 – p. 201, ln. 4.

32.     Because of Moore's position as General Counsel, the Department sought the outside opinion of three prominent employment lawyers in Oklahoma City to investigate the situation surrounding Moore's romantic relationship with Wilson in order to avoid any conflict of interest. *See* Ex. 3, Crosby Affidavit, at 3.

33.     These outside legal opinions found neither a violation of Department policy nor a risk of liability vis-à-vis third-party sexual harassment or hostile work environment claims related to Moore's relationship with Wilson. *See* Ex. 3, Crosby Affidavit, at 3.

34.     Although Bond was suspended for alleged wrongdoing and ultimately also offered resignation in lieu of termination from the Department, Poff nevertheless alleges that he was treated more favorably because Bond was allowed to use out his leave so as to maintain his medical benefits and officially resign at a later date. *See* Ex. 1, Poff Depo., p. 202, ln. 20 – p. 203, ln. 1.

35.     Poff concedes that she never asked Leadership for the same deal that they offered Bond, so she cannot say whether they would have offered her the same benefit. *See* Ex. 1, Poff Depo., p. 205, lines 7 – 10.

36.    Poff alleges that Flanagan was treated more favorably because his suspension lasted four months prior to his resignation in lieu of termination, during which time he continued to draw a paycheck and carry on some work-related duties.  *See* Ex. 1, Poff Depo., p. 206, lines 9 – 19.

37.    Flanagan resigned from his employment with the Department in lieu of termination.  *See* Ex. 3, Crosby Affidavit, at 3.

38.    Poff alleges that May was treated more favorably because he was allowed to use up his accrued leave prior to resigning.  *See* Ex. 1, Poff Depo., p. 207, lines 14 – 18.  Poff further alleges that May was given a "second chance" prior to his resignation. *Id*., p. 208, lines 20 – 25.

39.    Poff alleges that Smith was treated more favorably because he was demoted in lieu of termination.  *See* Ex. 1, Poff Depo., p. 209, lines 9 – 11.

40.    Poff believes that several factors led to her termination.  *See* Ex. 1, Poff Depo., p. 9, ln. 17 – p. 10, ln. 4; p.16, lines 8 – 18; *see also id*., p. 228, lines 13 – 16. (Q: "But you can't sit here and say that but for the fact you're a woman, you were treated this way; right?  A: I don't disagree with that statement.").

41.    Poff believes she was terminated in part due to her involvement with an investigation related to a drug-treatment facility.  *See* Ex. 1, Poff Depo., p. 13, lines 5 – 17.  Poff claims that she "made leadership very uncomfortable about [her] findings and [her] wanting for them to take action in the case." *Id*., p. 13, lines 14 – 17.

42.    Poff contends that the drug-treatment facility investigation put her at odds with Leadership at the Department.  *See* Ex. 1, Poff Depo., p. 13, lines 20 – 21 ("I think they felt I was a problem because I wouldn't be quiet about those findings.").

43.    Poff additionally believes that her termination was motivated by her disapproval of the romantic relationship between two other Department employees, Moore and Wilson.  *See* Ex. 1, Poff Depo., p. 13, ln. 25 – p. 14, ln. 4.  Poff states that she believed the relationship could create the risk of a third-party sexual harassment issue, and this finding "upset" Leadership.  *Id.*, p. 14, lines 4 – 7("My conversation with Durand [Crosby] indicating that Dewayne [Moore], his best friend, had a really large problem. …They knew I knew.  That's what we investigated, and I needed to go away.").

44.    Prior to hiring Poff for the position of Inspector General, White hired and then fired her predecessor, Robert Peak (a male), due to poor job performance.  *See* Ex. 2, White Affidavit, at 1.

45.    Poff and Peak are the only two employees White has directly supervised at the Department who have been the subject of disciplinary action.  *See* Ex. 2, White Affidavit, at 3.  The only other person who White has terminated from employment is Delong (male), and White made the termination decision in that case because Delong's supervisor, Poff, was on suspended status.  *Id.*

46.    Poff admits that the Department was her employer.  See Ex. 1, Poff Depo., p. 17, ln. 24 – p. 18, ln 3.

## STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998).  A court must examine the factual record in the light most favorable to the party opposing summary judgment.  *Wolf v. Prudential Ins. Co. of Am.,* 50 F.3d 793, 796 (10th Cir.1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (citations omitted).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . .  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Adler,* 144 F.3d at 670 (citations omitted).  In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  *Id.* at 252.

## ARGUMENT AND AUTHORTIY

**I.**     **Summary Judgment is Appropriate on Poff's Title VII Gender Discrimination Claim.**

The Department is entitled to judgment as a matter of law on Poff's gender discrimination claim brought pursuant to Title VII because she has failed to adduce evidence to refute the Department's legitimate, nondiscriminatory explanation for terminating her employment.  Poff offers no direct evidence of discrimination[2], but instead invokes the burden-shifting framework from *McDonnell Douglas* and attempts to establish an inference of discrimination from circumstantial evidence.  To establish a *prima facie* case for wrongful termination under Title VII, a plaintiff must show that she: (1) belongs to a protected class; (2) was qualified for the position; (3) was discharged despite her qualifications; and (4) her position was not eliminated after her discharge.

---

[2] A plaintiff alleging unlawful gender discrimination in her employment must show, either directly or indirectly, that the employer's decision was motivated by intentional gender discrimination.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  "Direct evidence is that which does not require an inference to prove discrimination, such as oral or written statements by an employer showing a discriminatory motive."  *Id*.  Poff has neither alleged nor proven direct evidence of gender discrimination, and the summary judgment record is devoid of any evidence of (1) gender-based comments; (2) employer bias against women; or (3) derogatory or derisive statements made by anyone at the Department whatsoever either (a) generally about women in the workforce, or (b) specifically about Poff or other female employees at the Department.

*See Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005); *Rivera v. City and Cnty of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

If a plaintiff sets forth a *prima facie* case for wrongful termination, the burden shifts to the employer to proffer a legitimate, nondiscriminatory explanation for its termination decision. *See Rivera*, 365 F.3d at 920 *(citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual. *See Jones v. Denver Post Corp., 203 F.3d 748, 756 (10th Cir.2000).*

For purposes of this Motion, Defendants concede that Poff has satisfied her initial burden of demonstrating a *prima facie* case for wrongful termination under Title VII. This burden is merely one of production and not persuasion. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). It is "not onerous." *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001). Accordingly, Defendants do not contest that Poff is female; she was qualified for the position of Inspector General with the Department; she was terminated from that position; and that her position was not eliminated after her discharge. However, **summary judgment remains appropriate because Poff's termination was not motivated by her gender**: the Department terminated Poff because she violated internal policy by failing to maintain confidentiality with respect to investigations within the Department; she encouraged – or at least – condoned Delong's inappropriate investigative techniques; and she was untruthful about her actions with respect to each. As is demonstrated below, the undisputed factual record

15

before this Court belies Poff's allegations of pretext with regard to that termination decision, and Defendants are entitled to judgment as a matter of law as to Poff's sole remaining cause of action alleging Title VII gender discrimination.

> A.   The Department Terminated Poff's Employment Because She Violated Department Policy by Failing to Maintain Confidentiality with Respect to an Ongoing Investigation within the Department.

Under the *McDonnell Douglas* framework, an employer refutes a *prima facie* claim for wrongful termination under Title VII by offering a legitimate, nondiscriminatory explanation for its termination decision. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229-30 (10th Cir. 2000). This burden is one of production, not persuasion; it "can involve no credibility assessment." *Reeves*, 530 U.S. at 142 (2000) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993)). It is well-established that an employee's unsatisfactory conduct satisfies this burden. *See, e.g., Swackhammer v. Sprint / United Management Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (Employer explanation that employee terminated for ethical violation of company policy satisfies *McDonnell Douglas* second prong analysis); *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (finding sufficient an employer's proffered explanation of "unsatisfactory conduct including [plaintiff's] failure to follow guidance issued by superiors, failure to follow established chains-of-command, a breakdown in [plaintiff's] attitude toward customer service, and [plaintiff's] fostering a climate of dissension and distrust. . . .").

Here, the Department terminated Poff's employment because she both violated Department policy by failing to maintain confidentiality with respect to ongoing and past

16

investigations within the Department and was untruthful about it.  *See* Undisputed

Material Fact ("UMF") No. 6, 16, 19. Additionally, the Department was presented with

evidence that Poff had prior knowledge that her subordinate, Delong, intended to engage

in witness intimidation with respect to an ongoing investigation, but failed to act on that

knowledge to prevent him from doing so.  *See* UMF No. 12, 14, 17.

On July 26, 2013, Crosby, Chief Operating Officer, and Moore, General Counsel,

of the Department hired Milnes, an independent investigator, to investigate the

allegations against Poff.   Milnes interviewed Poff and Delong as well as nine other

witnesses before reporting his findings to the Department.   *See* UMF No. 6 – 8.

Specifically, Milnes reported:

- Poff met with Amos, a Department employee, on July 8, 2013 in the
  parking lot of Shepherd Mall.  Amos admitted to Milnes that she and Poff
  discussed specific facts regarding an ongoing investigation of alleged
  sexual harassment that was being investigated by an outside investigator,
  and in which she and Poff were both witnesses.  *See* UMF No. 10.

- Amos further admitted to Milnes that she and Poff discussed a previous
  Department investigation conducted by Poff and involving allegations of
  sexual harassment.  *See* UMF No. 11.

- Delong admitted to Milnes  that on the morning of July 9, 2013, he made a
  statement that he was going to Shepherd Mall to interview – on an
  unrelated matter – the target of the same ongoing investigation that Poff
  and Amos had discussed the previous day.  Delong stated to Milnes that he

17

intended to stand at the back of the room during a presentation that this individual was conducting and stare at him so as to make him feel intimidated.   Shaffer confirmed these same facts to Milnes.   *See* UMF No. 12.

- Cable, another Department employee, admitted to Milnes that she overheard Delong make these statements and that she reported them to Poff.   *See* UMF No. 13.

- Poff also admitted that she was aware of Delong's statements prior to him going to Shepherd Mall.   *See* UMF No. 14.

- On July 9, 2013, Delong did in fact go to Shepherd Mall and conduct an unscheduled interview with the target of his investigation.   Delong's co-worker, Maddox, admitted to Milnes that he accompanied Delong to the interview and that, prior to the interview, Delong stood in the back of the room where the target was speaking.   Maddox, however, did not accompany Delong into the room because he was concerned that his presence, along with Delong's, may appear intimidating.   *See* UMF No. 15.

- Milnes also determined that, in his professional opinion, Poff was untruthful in answering his questions about her actions.   This belief was based, in part, on statements made by other witnesses.   *See* UMF No. 16.

Milnes reported these findings to Crosby and Moore, who in turn, reported them to Poff's supervisor, White.   *See* UMF No. 17.   Upon review of Department policy related to maintaining confidentiality, and believing that Poff had been untruthful during the

18

investigation and had likely condoned inappropriate conduct with respect to Delong's investigation, White made the decision to terminate Poff's employment. *See* UMF No. 18, 19.

> B.  Poff has Failed to Adduce Evidence of Pretext for Gender Discrimination.

The question of pretext arises only in the third and final step of the McDonnell Douglas inquiry, after the plaintiff has successfully established a *prima facie* case of discrimination and the employer has successfully articulated a legitimate, nondiscriminatory reason for the termination. *See Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006). At this juncture, the initial presumption of discrimination created by the plaintiff's prima facie case "simply drops out of the picture," *Hicks*, 509 U.S. at 511, and "[t]he plaintiff then carries the full burden of persuasion to show that the defendant discriminated on the illegal based of . . gender." *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1125 (10th Cir. 2005).

However, where, as here, "the employee was hired and fired by the same person within a relatively short period of time[3]," there is "a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (adopting the "same-actor inference" in Title VII discriminatory discharge cases) (*citing Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991). Although a plaintiff still has the opportunity to present countervailing evidence of pretext, "same actor evidence" gives rise to an inference that no

---

[3] *See, e.g., Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (temporal span of four years satisfies same actor inference).

discriminatory animus motivated the employer's actions. *See id.* As such, the Department is entitled to an inference that its stated reason for terminating Poff's employment was not motivated by a discriminatory animus because Poff was hired and fired by the same person: Terri White. *See* UMF No. 2, 19. Moreover, like Plaintiff, White is a female. *See* UMF No. 4.

Against this inference, then, Poff carries the burden of demonstrating pretext. The Tenth Circuit has noted that "[a] plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick*, 220 F.3d at 1230 (internal citations omitted). A plaintiff intending "to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that [she] was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Id.* (*citing Aramburu*, 112 F.3d at 1404).

In this lawsuit, Poff alleges that she was treated differently than six male employees at the Department, and that this differential treatment is evidence of pretext. *See* UMF No. 23, 24. She also alleges that the Department's stated reason for terminating her employment was not the true reason. *See* UMF No. 40, 41, 43. However, with respect to this secondary claim, Poff has failed to present any evidence

that the Department's stated reason for her discharge was false (apart from her alleged disparate treatment argument), so as to support an inference of intentional discrimination on the basis of gender.  *See, e.g. Texas Dept. of Community Affairs v. Burdine*, 450, U.S. 248, 256 (1981) (Failure to come forward with evidence of pretext will entitle the defendant to judgment.); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("Mere conjecture that the employer's explanation is pretext is an insufficient basis to defeat summary judgment.")  As the United States Supreme Court made clear in *Burdine*, moreover, a plaintiff must show not merely that the proffered reasons are pretextual but that they are "**a pretext for discrimination**."  450 U.S. at 252 (emphasis added); *see also E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1320 (10th Cir. 1992) (A pretextual reason may be advance to conceal a wide range of possible motivations so long as the advanced reason is not pretext for proscribed discrimination).

Put simply, whether Poff's termination was motivated, as she claims, by a host of other factors, including her involvement with the drug-treatment facility investigation as well as her voiced opposition to the Department's handling of the Morris / Wilson situation, is irrelevant to the inquiry now before the Court because "Title VII only reaches pretextual cases where the advanced reason is shown to be a pretext for a discriminatory animus based upon a person's protected status." *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1320 (10th Cir. 1992).  If anything, Poff's gender discrimination claim is undercut by her continual references to "other factors" she claims influenced the Department's termination decision **because those factors are unrelated to her gender** and summary judgment is appropriate where, as here, a plaintiff concedes that she

believes her termination was motivated by factors unrelated to her Title VII claim.  *Neal v. Roche,* 349 F.3d 1246, 1252 (10th Cir.2003) ("[I]t is enough [to grant summary judgment for the employer] if the plaintiff concedes a hidden motivation which the court concludes is nondiscriminatory ...." (emphasis omitted)); *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 328 (10th Cir.1996) ("[I]f a civil rights plaintiff concedes that the real reason for the employer's action was a motive not prohibited under the civil rights laws, such a concession mandates granting of summary judgment to the employer." (citation omitted)); *see also Randle v. City of Aurora,* 69 F.3d 441, 451 n. 14 (10th Cir.1995) ("[T]he plaintiff's concession of a lawful motive would take the issue of motive from the jury and preclude the inference of a discriminatory motive....").

To that end, Poff's Title VII gender discrimination claim rests exclusively on her assertion that she was treated less favorably than similarly-situated male employees at the Department.  To assert a claim of disparate treatment, a plaintiff must show that she was treated differently than other "similarly situated employees who violated work rules of comparable seriousness." *Aramburu*, 112 F.3d at 1404.  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. " *Id.*  A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated. *See id.*; *see also David v. City and Cnty of Denver*, 101 F.3d 1344, 1359-60 (10th Cir. 1996); *Flasher Co.*, 986 F.2d at 1320 (10th Cir. 1992).  The plaintiff bears the burden of establishing the other employees are actually "similarly

situated." *Kelley v. Goodyear Tire & Rubber Co.,* 220 F.3d 1174, 1178 (10th Cir.2000);

*see also Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007)

(Plaintiff bears the burden to produce evidence that employees are similarly situated);

*Zeigler v. J-M Mfg. Co., Inc.*, 2010 WL 4922585, at *6 (N.D. Okla. Nov. 29, 2010)

("conclusory . . . allegations do not satisfy plaintiff's burden of showing that she was

similarly situated to other . . . employees….").

Absent a common supervisor, employees are not "similarly situated" for purposes

of Title VII because seemingly "irrational differences in treatment . . . may be explained

by the fact that the discipline was administered by different supervisors." *Flasher*, 986

F.2d at 1320.  This is because the "[c]omparison of one disciplinary action with another

ordinarily is relevant only to show the bias of the person who decided upon the

disciplinary action." *Rivera*, 365 F.3d at 922.  In *Rivera*, the Tenth Circuit explained the

rationale as follows:

> If X fires A, n Hispanic, for particular misconduct, but gives only a warning
> to B, a non-Hispanic, for identical misconduct, one might infer that
> something beyond the misconduct (such as a bias by X against Hispanics)
> motivated the disciplinary action. But if it was Y, not X, who decided not to
> impose a harsher sanction against B, one cannot infer that X's decision to
> fire A must have been motivated by something other than A's misconduct.
> X may simply have a less tolerant view toward misconduct than Y does.

*Id.* (*citing Kendrick*, 220 F.3d at 1233 ("Different supervisors will inevitably react

differently to employee subordination.").

As such, a court cannot infer a discriminatory motive where, as here, Poff's

chosen comparators were disciplined by other supervisors within the Department.  Poff

has identified Dewayne Moore, Chris Flanagan, James Bond, Jeff Smith, Randy May and

23

Robert Harshaw as male employees suitable for comparison. *See* UMF No. 24. However, **none of these men shared a supervisor with Poff**. *See* UMF No. 25. One of her chosen comparators, moreover, Harshaw, held a lower-level position outside the central chain-of-command at the Department. Harshaw was the nursing director at a hospital operated by the Department. *See* UMF No. 28, 29. He reported to and was subject to the disciplinary standards of Larry Gross, Executive Director of the Griffin Memorial Hospital. *See* UMF No. 28. Poff does not identify Gross as a member of Leadership within the Department. *See* UMF No. 21.

And with respect to her remaining comparators, each reported to a different member of Leadership than did Poff. Moore and Bond reported to and were subject to the disciplinary standards of Crosby. *See* UMF No. 26. Flanagan, May, and Smith reported to and were subject to the disciplinary standards of Slatton-Hodges. *See* UMF No. 27. Accordingly, Poff has failed her burden to demonstrate that her chosen male comparators were actually similarly-situated and, thus, subject to the same standards governing performance evaluation and discipline, rendering impossible any meaningful comparison.

Even if Poff's comparators were similarly-situated for purposes of Title VII, however, summary judgment would nevertheless be appropriate absent evidence that each (1) violated work rules of comparable seriousness; and (2) were in fact treated more favorably. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006); *Kendrick*, 220 F.3d at 1230. With respect to the former category, Poff has failed to adduce evidence that Moore violated a work rule of comparable seriousness. "A

company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct." *Kendrick v*, 220 F.3d at 1233 (10th Cir. 2000).  In fact, Moore was absolved of any wrongdoing after an independent investigation concluded that his consensual, romantic relationship with a co-worker neither violated company policy nor created a risk of liability vis-à-vis third-party claims. *See* UMF No. 31 – 33.

Turning to the latter category, Poff has failed to adduce any evidence that Bond, Flanagan, or May were actually treated more favorably.  Each of these men were investigated for alleged wrongdoing, suspended from work during the Department's internal investigation, and ultimately offered resignation in lieu of termination.  *See* UMF No. 34 – 38.  **Poff was treated in exactly the same manner**.  *See* UMF No. 6, 9, 19. Nevertheless, Poff complains that Bond and May were offered more favorable resignation packages in that they were permitted to use up their accrued leave so as to continue receiving medical benefits until some later, official resignation date.  *See* UMF No. 34, 38.  However, Poff concedes that she never asked the Department for this same benefit and, therefore, she cannot say whether it would have been offered to her or not. *See* UMF No. 35.

Additionally, Poff complains that Flanagan's suspension lasted over four months, during which time he continued to receive a paycheck.  *See* UMF No. 36.  However, Poff presents no evidence to suggest that the Department delayed or otherwise postponed its decision to terminate Flanagan because of his gender, and the ultimate outcome of the Flanagan investigation led to his resignation in lieu of termination from the Department:

**the same outcome** Poff admits that she was offered at the conclusion of her suspension. *See* UMF. No. 19, 37.

Accordingly, then, Smith is the only Department employee selected for comparison by Poff who arguably violated a comparable policy but was disciplined less severely.  *See* UMF No. 39.  As previously discussed, however, Smith is not suitable for comparison because he did not have the same supervisor as did Poff.  *See* UMF No. 27. As such, Poff's allegations merely give rise to an inference that her own supervisor, White, had "a less tolerant view toward misconduct" than did Smith's supervisor, Slatton-Hodges.  *See Rivera*, 365 F.3d at 922.

Finally, a plaintiff "can not pick and choose a person [she] perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than [she]." *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1012 (10th Cir. 2001) (*citing Simpson v. Kay Jewelers,* 142 F.3d 639, 646–47 (3rd Cir.1998).  While Poff cherry picks six male comparators, she has failed to include any male employees who reported to her own supervisor, White.  Prior to Poff's selection as Inspector General, White hired and subsequently fired Robert Peak ("Peak"), a male, due to poor job performance.  *See* UMF No. 44.  Moreover, during White's tenure as Commissioner for the Department, she has terminated only three employees: Poff, Peak (male), and Delong (male).  *See* UMF No. 45.

Under the circumstances presented by this case, then, Poff's comparator analysis is nothing more than self-serving testimony without specific supporting facts.  Such

conclusory allegations lack probative value and will not withstand a motion for summary judgment.   *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995). Accordingly, Poff has failed to demonstrate a genuine issue of material fact as to pretext, and Defendants are entitled to judgment as a matter of law.

**II.    Summary Judgment is Independently Appropriate as to the Board Because the Governing Body of a Political Subdivision is not a Separate Employer Within the Meaning of Title VII, and Defendants Confess that the Department is the Proper Party in this Lawsuit.**

Summary judgment is appropriate as to the Board because the governing body of a political subdivision is not a separate "employer" within the meaning of Title VII, and as between the Board and the Department, Defendants confess that the Department is the proper party in this lawsuit.

In order to establish a *prima facie* case under Title VII, the plaintiff bears the burden of proving an underlying employment relationship as required by the Act.   *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998).   Because **Poff has failed to adduce any facts that the Board has a separate legal existence apart from the Department or which would support an independent employment relationship as between Poff and the Board**, summary judgment is appropriate because a plaintiff cannot recover twice from a single employer for the same alleged wrongdoing.

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e.   A "person", *i.e.* an employer, means "one or more individuals, governments, governmental agencies, **political subdivisions**, labor unions, partnerships,

27

associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, . . . or receivers."  42 U.S.C. § 2000e(a) (emphasis added).

Under Oklahoma law, the Department of Mental Health and Substance Abuse Services and its governing board are a single political subdivision of the State of Oklahoma.  *See* 43A O.S. § 2-101(A)(1) – (2).  The Department "exercises all functions of the state in relation to the administration and operation of all state facilities for the care and treatment of the mentally ill and drug – or alcohol – dependant persons."  43A O.S. § 2-101(A)(3).  The Board governs the Department and is charged with selecting the Commissioner of Mental Health and Substance Abuse Services (the "Commissioner"), who serves as the chief executive officer of the Department.  *Id.* § 2-101(A)(2); 2-201(A).

Because the Board does not have a separate legal existence from the Department, moreover, any claims against it are merely duplicative to those against the Department. *See e.g., Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty. Okla.*, 954 F. Supp. 2d 1292, 1295 (N.D. Okla. 2012) (where claims against the board of a governmental agency are duplicative of the claims against the agency itself, the action cannot be maintained as against both); *Rubio v. Turner v. Unified Sch. Dist. No. 2012*, 453 F. Supp. 2d 1295 (D. Kan 2006) ("[B]ecause the board of education is merely the governing body of the school district and is not a separate legal entity, any judgment against the board necessarily is against the school district. . . .  A suit against both entities is duplicative."); *see also Flarey v. Youngstown Osteopathic Hosp.*, 783 N.E.2d 582, 585 (Ohio App. 2002)

(holding that a suit against a corporate board of directors "would be nonsensical" and "would be, for all practical purposes, pointless").

Furthermore, the undisputed material facts establish that Poff has no evidence of an independent employment relationship with the Board.  To the contrary, Poff admits that the Department was her employer.  *See* UMF No. 46.  It is the plaintiff's burden to prove the existence of an employment relationship under Title VII, and the factual record before this Court illustrates that Poff contends that the Department was her employer.

Based on this record, the Board is entitled to summary judgment on Poff's Title VII gender discrimination claim because the Department and its governing board constitute a singular political subdivision within the State of Oklahoma, Poff admits that she believed the Department to be her employer, and Defendants confess that the Department is the proper party in this lawsuit.

## CONCLUSION

*McDonnell Douglas* provides a framework of shifting burdens, and Poff has failed to meet her burden of persuasion in this lawsuit.  She has produced **no direct evidence** to support her claim of Title VII gender discrimination.  And by way of circumstantial evidence, **she ultimately proffers unsubstantiated conjecture**.  Poff has failed to offer any evidence to rebut the Department's legitimate, nondiscriminatory reason for terminating her employment.  She has likewise failed to identify any similarly-situated male employees at the Department who violated workplace rules of comparable seriousness and were treated more favorably.  In fact, none of her chosen comparators are similarly-situated for Title VII purposes.  And even if they were, Poff's ultimate

assessment of their respective job performance is *wholly subjective* and her evidence in support of their more favorable treatment is *entirely speculative*.  Against this summary judgment record, moreover, Defendants have presented same-actor evidence and are entitled to an inference that Poff's termination was not pretext for discrimination because the supervisor that fired her was the same person who offered Poff the position in the first place.

Accordingly, Defendants respectfully request this Court to enter summary judgment in Defendants' favor on Poff's sole remaining cause of action for Title VII gender discrimination, and to enter final judgment in favor of all Defendants with respect to this litigation.

Respectfully submitted,

/s/ *Victor F. Albert*
VICTOR F. ALBERT, OBA #12069
MATTHEW L. WARREN, OBA #31260
CONNER & WINTERS, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK  73102
Telephone:  (405) 272-5711
Facsimile:  (405) 232-2695
valbert@cwlaw.com
mwarren@cwlaw.com
**Attorneys for Defendants, State of Oklahoma ex rel. The Oklahoma Department of Mental Health and Substance Abuse Services and The Board of Directors for The Oklahoma Department of Mental Health and Substance Abuse Services**

## CERTIFICATE OF SERVICE

I certify that on the 1st day of March 2016, this Motion for Summary Judgment was filed in the United States District Court for the Western District of Oklahoma, and that a true and correct copy of said Motion to Dismiss was served, via ECF, upon the following:

Rachel L. Bussett, OBA #19769
Bussett Law Firm, PC
3555 N.W. 58th Street, Suite 1010
Oklahoma City, OK  73112
Telephone:  (405) 605-8073
Facsimile:  (405) 601-7765
rachel@bussettlaw.com
*Attorneys for Plaintiff*

Jeremy Tubb, OBA #16739
Matthew S. Panach, OBA #22262
FULLER, TUBB, BICKFORD & KRAHL
201 Robert S. Kerr, Suite 1000
Oklahoma City, OK  73102
Telephone:  (405) 235-2575
Facsimile:  (405) 232-8384
jeremy.tubb@fullertubb.com
panach@fullertubb.com
*Attorneys for Defendants*
*Terri White, Durand Crosby,*
*Cratus Dewayne Moore, and Ellen Buettner*

/s/ *Victor F. Albert*
VICTOR F. ALBERT